## Richmond

### Daisy Miller Tweedy v. J. C. Penney Company, Inc., Et Al.

January 16, 1976.

Record No. 741149.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Robert C. Wood, III* (*Edmunds, Williams, Robertson, Sackett, Baldwin & Graves*, on briefs), for plaintiff in error.

*Wm. Rosenberger, Jr.,* for defendants in error.

COCHRAN, J., delivered the opinion of the court.

Daisy Miller Tweedy, plaintiff, filed a motion for judgment against J. C. Penney Company, Inc., and three of its employees, as defendants, seeking compensatory and punitive damages allegedly resulting from an incident which occurred in Penney's store in the City of Lynchburg. Tweedy alleged that defendants had insulted, slandered, unlawfully detained, and maliciously arrested and prosecuted her.

Tweedy took a non-suit as to two of the Penney employees who were defendants and, by stipulation, amended her motion for judgment against the remaining defendants, Penney and its employee, Bonnie Tate Cocke, to delete all allegations except those relating to insulting words and malicious prosecution, and to seek only compensatory damages.

A jury trial resulted in a verdict for plaintiff in the amount of $1,500, on which the trial court entered judgment. Subsequently, however, the court vacated the judgment and entered judgment for defendants on the ground that plaintiff was required to prove actual malice, which, as a matter of law, she had failed to establish.

Plaintiff's assignments of error challenge this ruling as well as various instructions granted and others refused by the trial court. Defendants have assigned cross-error to the trial court's actions in overruling defendants' motion to require plaintiff to elect between two causes of action, and in granting and refusing certain instructions.

It is undisputed that on October 14, 1972, Tweedy entered the Penney store shortly after it opened for business. She went to a clothing rack, selected some slacks which she took to a dressing room, and shortly thereafter was accused of attempting to steal a pair of the slacks.

Tweedy testified that she carried three pairs of "pants" from the display rack to the dressing room, an enclosure large enough for only one person, with a curtain in front and one clothes hook and one shelf on the wall. Tweedy set her handbag on the floor, placed her coat on the shelf, and removed and laid on top of the coat the pants which she had worn into the store. Holding up the first pair of store pants, she saw that they were too small. She double-folded these pants and dropped them onto her closed pocketbook, so that they were partly on the pocketbook and partly on the floor. Tweedy

testified that Bonnie Cocke, a store employee, "peeped around" the curtain and asked her if she was doing "all right", to which Tweedy replied, "Yes, I guess so". Tweedy continued to try on pants. Cocke reached behind her and took the pants that had been dropped. A moment later, Cocke informed Tweedy that the manager wished to talk to her, giving as the reason that Tweedy "had those pants in [her] pocketbook". Tweedy denied the accusation.

Cocke's testimony was that, as she passed the dressing room, Tweedy was leaning over her open pocketbook, in which Cocke saw a pair of tightly rolled slacks. The slacks were entirely inside the pocketbook. Cocke accused Tweedy of attempting to steal the slacks and sent for the manager.

Tweedy was escorted to the manager's office where she remained until a police officer arrived and took her to the police station. There she was fingerprinted, photographed, and questioned. When she was subsequently tried in the General District Court on a warrant charging violation of Code § 18.1-126,[1] the charge was dismissed.

Defendants urged, and the trial court ultimately agreed, that a qualified privilege existed between Cocke and Tweedy, requiring Tweedy to prove actual malice in order to recover. *Ridgeway* v. *Safeway Stores, Inc.*, 139 F. Supp. 290 (E. D. Va. 1948), upon which defendants and the trial court relied, is authority for the principle that a qualified privilege exists between a store employee and a customer. To the same effect is *Kroger Grocery & Baking Co.* v. *Yount*, 66 F.2d 700 (8th Cir. 1933). The trial court also relied on *Crawford and Company* v. *Graves*, 199 Va. 495, 100 S.E.2d 714 (1957), in which we held that a qualified privilege between an insurance adjuster and an insured was assumed when the adjuster slandered the insured's doctor, and *Peoples L. Ins. Co.* v. *Talley*, 166 Va. 464, 186 S.E. 42 (1936), where we held that a qualified privilege existed when an employer spoke to employees about another employee. Those cases, however, are inapposite.

In 1958 the General Assembly enacted a law for the obvious pur-

---

[1] Code § 18.1-126 (Cum. Supp. 1975) provided in pertinent part:
"Whoever, without authority, with the intention of converting goods or merchandise to his own or another's use without having paid the full purchase price thereof, or of defrauding the owner thereof out of the value of the goods and merchandise, (i) willfully conceals or takes possession of the goods or merchandise of any store or other mercantile establishment . . . shall be deemed guilty of larceny . . . . The willful concealment of goods or merchandise of any store or other mercantile establishment, while still on the premises thereof, shall be prima facie evidence of an intent to convert and defraud the owner thereof out of the value of the goods or merchandise."

pose of affording more adequate relief than had previously been available to merchants from the increasing depredations of thieves. Acts 1958, c. 114. At the time of Tweedy's arrest this law, including Code §§ 18.1-126 and 18.1-127,[2] had been codified as Article 5, "Shoplifting", of Chapter 3, "Offenses against Property", of Title 18.1, "Crimes and Offenses Generally." Under Code § 18.1-127 immunity from civil liability for various offenses, including slander and malicious prosecution, was accorded a merchant who caused the arrest of a person under the provisions of Code § 18.1-126, provided the merchant had probable cause to believe that the person had committed wilful concealment of goods or merchandise. Thus, the legal principles applicable to shoplifting, and to civil litigation arising from efforts to control this crime, were embodied, prior to 1975 amendment,[3] in Code §§ 18.1-126 and 18.1-127, and did not include the concept of qualified privilege.

In *F.B.C. Stores, Inc.* v. *Duncan*, 214 Va. 246, 198 S.E.2d 595 (1973), we held that a merchant was entitled to exemption from civil liability if he could prove probable cause for the restraint and detention of a customer, and that the test of probable cause was whether the circumstances were such as to justify an ordinarily prudent man in acting as the merchant did. We also held that in an action for false imprisonment, although actual malice must be proved to justify punitive damages, legal malice inferred from the circumstances was sufficient to support an award for compensatory damages.

To the same effect, in *Giant of Virginia* v. *Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967), a malicious prosecution action, we affirmed the ruling of the trial court that approved an award to a store customer of compensatory damages based on lack of probable cause and set aside an award of punitive damages in the absence of proof of actual malice. This followed an earlier case in which a majority, in a concurring opinion, held that, although a plaintiff in a malicious prosecution action must show both malice and want of probable cause, a

[2] Code § 18.1-127 (Repl. Vol. 1960) provided:

"A merchant, agent or employee of the merchant, who causes the arrest of any person pursuant to the provisions of § 18.1-126, shall not be held civilly liable for unlawful detention, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested, whether such arrest takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee provided that, in causing the arrest of such person, the merchant, agent or employee of the merchant, had at the time of such arrest probable cause to believe that the person committed wilful concealment of goods or merchandise."

[3] The law, as amended by Acts 1975, cc. 14, 15, is now codified as Code §§ 18.2-103, *et seq.* (Repl. Vol. 1975).

jury could find that malice has been proven by want of probable cause. *Freezer* v. *Miller*, 163 Va. 180, 209-10, 176 S.E. 159 (1934).[4]

Applying the foregoing principles to the present case, we hold that the trial court erred in vacating the judgment for Tweedy and in entering judgment for defendants. As Tweedy was not seeking punitive damages, she was not required to prove actual malice on the part of Cocke as a prerequisite to recovery of compensatory damages for either insulting words or malicious prosecution. The court, having granted Instruction 2, under which she was entitled to recover if the jury believed that Cocke preferred the criminal charge against her maliciously and without probable cause, also gave Instruction 4, which informed the jury that malice could be inferred from either insulting words or lack of probable cause. We express no opinion as to these instructions, because they were tendered by plaintiff and were not prejudicial to defendants.

The burden was on defendants to prove probable cause as an affirmative defense under Code § 18.1-127, so the court erred in granting Instruction B, tendered by defendants, which required Tweedy to prove lack of probable cause. Moreover, the court erred in granting Instruction G, tendered by defendants, which directed the jury to find for defendants if they found that Cocke acted "without personal animosity", *i.e.*, actual malice, against plaintiff. Thus, these instructions given by the court imposed a greater burden on Tweedy than she was required to carry.

There is no merit in defendants' assignments of cross-error. The trial court did not err in overruling defendants' motion, made on the day of trial, to require Tweedy to elect between the cause of action for insulting words and that for malicious prosecution. Aside from the late filing of the motion, both causes of action arose from one continuous course of conduct by the same parties, both involved probable cause, and the trial court instructed the jury on both.

Defendants are not justified in complaining about the instructions tendered by plaintiff which the court granted, as any errors in these instructions also favored defendants. Thus, Instruction 1, as amended by the court over Tweedy's objection, incorrectly required Tweedy to prove that Cocke had "maliciously" spoken insulting words. Plaintiff's proffered Instruction 1-B,[5] a correct statement of

---

[4] This concurring opinion of four justices is missing from the report of this case in Volume 176, Southeastern Reports.

[5] INSTRUCTION 1-B

"The Court instructs the jury that defendant, Bonnie Tate Cocke was the agent and

the law relating to the action for insulting words,[6] was refused by the court.

■ Instructions C, E and H, proffered by defendants, were properly refused. Instruction C incorrectly would have denied a recovery by Tweedy unless she proved both actual malice and lack of probable cause on the part of defendants in preferring the criminal charge against her. Instruction E defined actual malice, which was irrelevant, and Instruction H, incorrectly diluting the definition of probable cause, would have relieved defendants from liability if the jury believed that Cocke was merely mistaken in her belief that Tweedy was guilty as charged. A correct definition of probable cause, following the test enunciated in *F.B.C. Stores, Inc.* v. *Duncan, supra*, 214 Va. at 251, 198 S.E.2d at 599, had been given by the court in another instruction tendered by plaintiff.

We conclude that defendants were benefited rather than prejudiced by errors committed by the trial court in giving and refusing instructions. Accordingly, we will reverse the judgment of the trial court, reinstate the jury verdict for plaintiff in the amount of $1,500 and enter judgment thereon.

*Reversed and final judgment.*

employee of the defendant, J. C. Penney Company, Inc., and on October 14, 1972, and all other times mentioned in this action was acting in the ordinary course of J. C. Penney Company's business and within the scope of their employment; and therefore, defendant, J. C. Penney is liable for the acts of its employee, Bonnie Tate Cocke.

"If you believe from a preponderance of the evidence that defendant, Bonnie Tate Cocke, spoke words to the plaintiff which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace, then such words are actionable, and damages are presumed, and the plaintiff has a right to sue Bonnie Tate Cocke and her employer, J. C. Penney, and to recover such damages as determined proper by you in accordance with other instructions of this Court unless, however, you further believe that on October 15, 1972, the defendant had probable cause to believe that plaintiff committed willful concealment of goods or merchandise of the defendant, J. C. Penney.

"The court further instructs the jury that the defendant has the burden to prove by a preponderance of the evidence that the defendant had probable cause to believe that plaintiff committed willful concealment of merchandise."

[6] Under Virginia law an action for insulting words is treated as a common law action for slander or libel, for words actionable *per se*, except that no proof of publication is necessary. *Carwile* v. *Richmond Newspapers*, 196 Va. 1, 6, 82 S. E.2d 588, 591 (1954). Thus, Code § 18.1-127, which explicitly affords to a merchant, acting with probable cause, immunity from civil liability for slander, implicitly provides such immunity for insulting words.