474 A.2d 537

**Joe William LEE, Jr.**

v.

**STATE of Maryland.**

**No. 692, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

May 8, 1984.

Michael R. Malloy, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender, on brief, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Sandra A. O'Connor, State's Atty. for Baltimore County, and Barbara Jung, Asst. State's Atty. for Baltimore County, on the brief, for appellee.

Submitted before WILNER, GETTY and BELL, JJ.

BELL, Judge.

Appellant, Joe William Lee, Jr. (Lee) was convicted by the Circuit Court for Baltimore County of two separate charges

of theft under $300.00 and sentenced to the Division of Correction for two consecutive one year sentences.

We will dispose of the appeal from the first conviction without much discussion as the evidence clearly was sufficient to convict Lee of theft. In the second conviction, however, Lee urges this Court to decide that his concealment of a bottle of liquor in his trousers while shopping in a self-service liquor store does not constitute evidence sufficient to convict him of theft. Since Lee was accosted with the merchandise in the store, abandoned it and then departed from the premises, this case poses a substantial question regarding the law of theft which has never specifically been resolved in this state: May a person be convicted of theft for shoplifting in a self-service store if he does not remove the goods from the premises of that store?

The agreed statement of facts disclosed that in the first case, two security guards employed by Montgomery Ward observed Lee take one bottle of cologne valued at $14.50 from the display area and conceal it in his pocket and then pick up a hair dryer valued at $16.99 and conceal it under his jacket. Lee exited the store without paying for the merchandise. He was thereafter apprehended and arrested. Based on these facts, we find ample evidence to support Lee's subsequent conviction under Md.Code (1957 Repl.Vol.1982) Art. 27 § 342. Thus we hold the court did not err.

In the second case, an employee of a pharmacy-liquor store observed Lee displacing two $16.47 bottles of cognac. Lee concealed one of the bottles in his pants and held the other in his hand. When approached by the employee, Lee returned both bottles to the shelf and fled the store. He was chased by the employee who flagged down a passing police cruiser. Subsequently, Lee was arrested and convicted. For the reasons set forth in our discussion, we uphold the theft conviction despite the fact Lee was accused and "returned" the merchandise before he left the store.

To resolve the question of whether the evidence in the second case is sufficient to satisfy the elements of larceny as defined by the theft statute, Md.Code (1954 Repl.Vol. 1982) Art. 27 § 342, the development of the common law of larceny and its evolution into modern statutory form must be briefly addressed.

## Common Law

Distinctions among larceny, embezzlement, obtaining by false pretenses, extortion, and the other closely related theft offenses, including shoplifting, can be explained by a brief exposition of the historical role criminal law played in protecting property. Model Penal Code, Sec. 223.1 and Comment (Proposed.Official Draft, 1962) (hereinafter MPC). The history of these theft related offenses commenced with the common law courts' concern for crimes of violence (e.g. robbery) and for protecting society against breaches of peace; then expanded by means of the ancient quasi-criminal writ of trespass to cover all taking of another's property from his possession without his consent, even though no force was used. This latter misconduct was punished as larceny. MPC 223.1; Fletcher, *Metamorphosis of Larceny*, 89 Harv.L.Rev. 469 (1976). Larceny at common law was defined as the trespassory taking and carrying away of personal property of another with intent to steal the same. *Fletcher v. State*, 231 Md. 190, 189 A.2d 641 (1963); *Farlow v. State*, 9 Md.App. 515, 517, 265 A.2d 578 (1970); *See also* Perkins, *Criminal Law* 234 (2d ed. 1969); *People v. Olivo*, 52 N.Y.2d 309, 438 N.Y.S.2d 242, 420 N.E.2d 40 (1981). The requirement of a trespassory taking made larceny an offense against possession [1]; and thus, a person such as a

---

1. "Trespassory taking" under common law principles focused on the physical aspect of taking and obtaining possession. Under this traditional approach to larceny, the rule of "possessorial immunity" was fundamental in defining the contours of larceny. This rule provided that transferring possession of an object conferred immunity from the criminal law on the party receiving possession, for subsequent misuse or misappropriation of the entrusted object. 89 Harv.L.Rev. 469, 472

bailee who had rightfully obtained possession of property from its owner could not be guilty of larceny even if he used the property in a manner inconsistent with the owner's expectations.[2]

Because of this narrow interpretation of larceny, the courts gradually broadened the offense by manipulating the concept of possession to embrace misappropriation by a person who with the consent of the owner already had physical control over the property. MPC § 223.1. First the common law courts distinguished "legal possession" from "physical possession", or actual control, in that a shopowner retained "legal possession" until the actual sale was made, regardless of who had physical possession. In *Chisser*, 83 Eng.Rep. 142 (1678), for example, the defendant bolted from a store without paying for two cravats the shopkeeper had handed him for inspection. The Exchequer found the taking to be felonious, despite the handing over of the cravats, in that the owner retained legal possession and was therefore protected until the actual sale. 89 Harv. L.Rev. at 487.

In an effort to delineate further the contours of possession, the courts began to distinguish "possession" from "custody", thereby enabling an employer to temporarily entrust his merchandise to an employee or a customer while still retaining "possession" over the goods until a sale was consummated. *See People v. Olivo, supra* at 244, 420 N.E.2d at 42, citing 3 Holdsworth, A History of English Law [3d ed. 1923], at p. 365. These distinctions and delineations, which ultimately laid the foundation for the statutory offense of theft as it exists today, provided the courts with the judicial machinery with which to sustain a larceny

---

(1976). This immunity terminated when the possessor (usually the bailee) returned possession to the owner or delivered the goods to another party. 89 Harv.L.Rev. at 475.

**2.** A judicial struggle thereafter developed to ascertain who had possession because an accused could not, in legal contemplation, trespass against a person's property if that person did not have possession.

conviction when the customer who had rightful "custody" or "physical possession" converted the property to his own use and thereby performed, albeit subjectively, the requisite "trespassory taking."

As the expansion of the offense continued, the intent element increased in importance while the "trespassory taking" element became less significant. In *King v. Pear*, 1 Leach 212, 168 Eng.Rep. 208 (1779), a case involving the fraudulent hiring of a horse, "larceny by trick" was born when the judges faced the problem of whether intent to steal was sufficient to overcome the immunity provided by rightfully acquiring possession. In *Pear's* case the judges reasoned that if Pear's intention was fraudulent at the outset, then he never acquired legal possession. Thus the conversion of the horse (presumably at the time of the sale) became equivalent to the taking and carrying away under common law larceny. 89 Harv.L.Rev. at 505. Apparently, the courts began to realize that the actor's wrong typically had little to do with the act of acquiring physical control over the object, but, rather revolved around the intent behind the acquisition. Accordingly, later cases often ignored the fact that a defendant had obtained possession lawfully. Instead they focused upon the intent of the actor as evidenced by his unauthorized exercise of control over the property; thus the "trespassory taking" element became a subjective rather than objective element.[3] 89 Harv. L.Rev. at 517. Most modern statutes have incorporated these developments under a unified definition of theft which tends to focus upon the perpetrator's intent and his exercise of dominion and control over the property. MPC § 223.1; Joint Subcommittee on Theft Related Offenses, *Revision of*

---

**3.** Several offenses similar to larceny resulted from legislative initiative in expanding the law of theft to cover misappropriations untouched by common law larceny. Beginning with an act of Parliament in 1799, statutes evolved which punished misappropriations by persons who had in their possession or control the property of another. These offenses were embezzlement, fraudulent conversion, larceny by bailee, larceny after trust (in Maryland) and false pretenses. *See* MPC § 223.1 Comment.

*Maryland Theft Laws and Bad Check Laws (1978)* (hereinafter Subcommittee).

In Maryland, before the passage of the theft law which became effective on July 1, 1979 (Md.Code (1954 Repl.Vol. 1982), Art. 27 §§ 340–344) the law of larceny was sprinkled throughout Article 27. Several separate offenses, each involving some sort of taking and carrying away of property with an intent to deprive the owner, were consolidated under Article 27 § 342. These offenses included larceny, larceny by trick, larceny after trust, embezzlement, false pretenses, shoplifting, and receiving stolen property. Gilbert and Moylan, *Md. Criminal Law: Practice and Procedure* § 19.0 (1983). The legislature consolidated these offenses in an effort to eliminate the "technical and absurd distinctions that have plagued the larceny related offenses and produced a plethora of special provisions in the criminal law." Subcommittee, *supra* at p. 2.[4] Under § 342 are the primary elements of theft: wilfully and knowingly; obtaining unauthorized control over the property or services of another; by deception or otherwise; with intent to deprive the owner of his property; by using, concealing, or abandoning it in such a manner that it probably will not be returned to the owner. Gilbert and Moylan, *supra*, § 19.4.

■ The evolution of theft law is particularly relevant to thefts occurring in modern self-service stores where cus-

---

**4.** Before 1979, shoplifting was a separate offense under Article 27, § 551A. That section provided in pertinent part

   (a) What constitutes—In any mercantile establishment, it is unlawful for any person

   (1) To remove any goods, wares or merchandise from the immediate place of display or from any other place within the establishment with the intent to appropriate the same to the use of the person so taking, or to deprive the owner of the use, or value, or any part thereof; or

*    *    *    *    *    *

   (3) to conceal any such goods, wares or merchandise with a like intent; ...

As we will see *infra,* the new theft statute, while eliminating the separate offense of "shoplifting", retains the important elements of "intent to deprive" the owner of property and "concealment".

tomers are impliedly invited to examine, try on, and carry about the merchandise on display. In a self-service store, the owner has in a sense, consented to the customer's possession of the goods for a limited purpose. (*See e.g. People v. Olivo, supra; Day v. Grand Union Co.*, 280 App.Div. 253, 254-55, 113 N.Y.S.2d 436 (1952); *Lasky v. Economy Grocery Stores*, 319 Mass. 224, 65 N.E.2d 305 (1946); *Groomes v. United States*, 155 A.2d 73 (D.C.Mun. App.) (1959). Under common law principles of theft, a person could not have been convicted if apprehended while still in the store because the perpetrator would have rightful possession (albeit temporarily) and thus could not perform the element of trespassory taking until he left the store without paying (at which point it might be too late). Under the present law, the fact that the owner temporarily consents to possession does not preclude a conviction for larceny if the customer exercises dominion and control over the property by using or concealing it in an unauthorized manner. Such conduct would satisfy the element of trespassory taking as it could provide the basis for the inference of the intent to deprive the owner of the property.

## *Other Jurisdictions*

Although this is a case of first impression in Maryland, courts in other jurisdictions which have considered this issue appear to be unanimous in holding that a shoplifter need not leave the store to be guilty of larceny. (*E.g. People v. Olivo, supra; State v. Grant*, 135 Vt. 222, 373 A.2d 847 (1977); *Groomes v. United States, supra; People v. Baker*, 365 Ill. 328, 6 N.E.2d 665 (1937); *People v. Bradovich*, 305 Mich. 329, 9 N.W.2d 560 (1943); *accord People v. Britto*, 93 Misc.2d 151, 402 N.Y.S.2d 546, (1978). These cases have revealed several different factors which if found may be sufficient to allow a trier of fact to find the requisite larcenous intent.

In New York, the Court of Appeals in *People v. Olivo, supra,* sustained convictions of larceny based on fact patterns not unlike the instant case. In that case, the Court

found the evidence sufficient to convict the defendants in three separate situations while in a self-service store. In one the defendant concealed goods in his clothing, in a particularly suspicious manner and was stopped before he exited the store. In a second he removed a price tag from a jacket and put it on himself and was stopped prior to leaving the store. In a third the defendant looked furtively up and down the aisle before concealing a book in an attache case. In upholding these convictions, the Court espoused at 420 N.E.2d 40, 45.

> In view of the modern definition of the crime of larceny, and its purpose of protecting individual property rights, a taking of property in the self-service store context can be established by evidence that a customer exercised control over merchandise wholly inconsistent with the store's continued rights. Quite simply, a customer who crosses the line between the limited right he or she has to deal with merchandise and the store owner's rights may be subject to prosecution for larceny. Such a rule should foster the legitimate interests and continued operation of self-service shops, a convenience which most members of the society enjoy.

The Criminal Court of the City of New York in *People v. Britto, supra,* also sustained a conviction of theft in a self-service store. In that case the court held that evidence indicating the defendant placed six or seven ham steaks under his belt and walked by the register without paying was sufficient to present a prima facie case of shoplifting. The fact that the defendant had not left the store with the concealed goods was wholly irrelevant.

In the District of Columbia in *Groomes v. United States, supra,* a defendant, while shopping in a self-service market was seen by a clerk to remove two articles from a shelf and put them in her purse. She closed the purse and after looking around her, walked about the market. The customer claimed that the Government's evidence failed to estab-

lish that she had obtained complete control and dominion over the property. The court held at p. 75

> [I]t is quite true, as appellant argues, that the burden of proof to establish a taking and asportation is more onerous on the Government where the larceny alleged occurs in a self-service store. By this system of merchandising the patron is invited to select and take possession of the commodities he intends to purchase. Mere possession of the goods, however, does not pass title to the customer and the possession is of itself conditional in character until the merchandise is taken to the cashier and payment is made.
>
> The Government's evidence in this case tended to prove that appellant's actions were wholly inconsistent with those of a prospective purchaser. It was established that the items once removed from the shelf were immediately secreted in her purse. At the time, the cart used by appellant was about half full of groceries. By concealing the articles in her purse separate and apart from the other goods in the cart, appellant acquired complete and exclusive control over the property. It is well settled that the elements of a taking and asportation are satisfied where the evidence shows that the property was taken from the owner and was concealed or put in a convenient place for removal. The fact that the possession was brief or that the person was detected before the goods could be removed from the owner's premises is immaterial. (Citations omitted).

To the same effect *see McRae v. United States*, 222 A.2d 848 (D.C.App.1966) (evidence sufficient to convict of larceny when defendant concealed pair of slacks under jacket.)

In a case almost identical to the case *sub judice* the Supreme Court of Vermont in *State v. Grant, supra*, held that a defendant, who had placed two cartons of cigarettes under his shirt, and was apprehended before he left the supermarket, had "wrongfully assumed possession of the cigarettes and had carried them away with the intent of depriving the owner thereof."

In many cases the determinative factor appears to be defendant's act of concealing the goods under his clothing or in a container. In *Bradovich v. United States, supra,* the Supreme Court of Michigan held that a person who had taken a jacket from a rack and concealed it in his own clothing had accomplished the larceny once the clothing was concealed. And in Illinois, the courts have found completed larcenies whenever the defendants' "actions were not those of a prospective customer ... but rather those of one who feloniously intended to steal the articles" (365 Ill. at 333, 6 N.E.2d at 668), regardless of the fact that the defendants had not left the store (*see, e.g., People v. Baker, supra; People v. Lardner,* 300 Ill. 264, 133 N.E. 375 (1921).

■ From this perusal of cases, we conclude that several factors should be assessed to determine whether the accused intended to deprive the owner of property. First, concealment of goods inconsistent with the store owner's rights should be considered. "Concealment" is conduct which is not generally expected in a self-service store and may in many cases be deemed "obtaining unauthorized control over the property in a manner likely to deprive the owner of the property." Other furtive or unusual behavior on the part of the defendant should also be weighed. For instance, if a customer suspiciously surveys an area while secreting the merchandise this may evince larcenous behavior. Likewise, if the accused flees the scene upon being questioned or accosted about the merchandise, as in the instant case, an intent to steal may be inferred. The customer's proximity to the store's exits is also relevant. Additionally, possession by the customer of a shoplifting device with which to conceal merchandise would suggest a larcenous intent. One of these factors or any act on the part of the customer which would be inconsistent with the owner's property rights may be taken into account as relevant in determining whether there was a larcenous intent.

*Legislative Intent*

■ An examination of the legislative history relating to the law of theft leads this Court to conclude that the law in Maryland is intended to be no different than the above cited jurisdictions.

Shoplifting in a self-service store constitutes theft by virtue of Md.Code Art. 27 § 342(a):

(a) *Obtaining or exerting unauthorized control*—A person commits the offense of theft when he willfully or knowingly obtains control which is unauthorized or exerts control which is unauthorized over property of the owner, and:

(1) Has the purpose of depriving the owner of the property; or

(2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

(3) Uses, conceals, or abandons the property knowing the use, concealment or abandonment will deprive the owner of the property.

■ This subsection requires two primary elements to constitute the offense of theft. They are (1) a knowing exertion or obtainment of control (inadvertent or negligent exertion of control is not punished); and (2) a purpose to "deprive" (the mental element prevalent in most thefts). Subcommittee, *supra* at p. 31. *See generally,* State of Md. Commission on Criminal Law, Report and Part I of the Proposed Criminal Code, sec. 155 (June 1, 1972).

Most of the activities which previously constituted shoplifting will now be a theft offense through a violation of this subsection. The Subcommittee was of the opinion that shoplifting had become a crime that was not regarded seriously by many persons and was achieving an almost socially acceptable status. It was therefore decided that the sterile label of shoplifting would be purged from the Code and that the activities constituting shoplifting would be denominated as 'theft'. A perpetrator of

these activities would then be known as a 'thief'—a designation which properly reflects the character of his crime and the class of offender with whom he should be categorized.

Subcommittee, *supra* at p. 32.

To illustrate that Lee's act of concealing a bottle of liquor in his trousers amounts to shoplifting and thus may be considered theft, we will apply the facts of this case to each element of the statute.

Lee knowingly obtained unauthorized control over the property of another when he consciously picked up the bottle of cognac and "concealed the bottle in his pants." A person acts knowingly when

he is practically certain that the result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is practically certain of its existence. Md.Code (1954 Repl.Vol.1982) Art. 27 § 340(e).

"Obtain" is defined in § 340(f) as "bring[ing] about a transfer of interest or possession." The word "obtain" applies to instances where there is constructive acquisition of the property. Subcommittee, *supra* at p. 17. "Property" means anything of value. Md.Code (1954 Repl.Vol.1982) Art. 27 § 340(h).[5] In this case when Lee placed the bottle of liquor in his pants, there is no question that he acted knowingly. It would be most difficult to negligently hide a bottle of liquor in such a manner. Lee obtained control over the property when he hid it from the owner's view.

The latter portion of the statute requires proof of mental state—did Lee have the purpose to deprive the owner of the

---

**5.** Maryland courts have recognized that larceny is an offense against possession of property owned by another and that an allegation in an indictment for larceny that the defendant stole the goods of another is sufficient if supported by proof that the person named in the indictment as the owner had any "legal interest or special property" in the goods, such as the right of a bailee or carrier to their possession, and such person need not hold legal title to the goods. (Citations omitted). Commission Report, *supra* at 235.

bottle of liquor? The requisite mental state is usually inferred from the offender's disposition of the property. Section 342(a)(1) provides for proof of a "purpose to deprive" in general terms. To cover those instances where the purpose to deprive is more difficult to ascertain however, paragraphs (a)(2) and (a)(3) were added to the new theft statute. Subcommittee, *supra* at p. 31. The most appropriate section to apply to the facts of this case would be (a)(2) where intent can be inferred if the accused "wilfully or knowingly use[s] conceal[s] or abandon[s] property in such a manner as to deprive the owner of the property." "Conceal" is not specifically defined in the theft statute, but since the general rule of construction is that words are given their ordinary meaning unless stated otherwise, we refer to Black's Law Dictionary, which defines "conceal" as:

to hide, secrete, or withhold from the knowledge of others. To withdraw from observation ..., to cover or keep from sight; or prevent discovery of. Black's Law Dictionary 261 (rev. 5th ed. 1979).

"Deprive" means to "withhold property of another":

Permanently; or for such a period as to appropriate a portion of its value; or with the purpose to restore it only upon payment of reward or other compensation; or to dispose of the property and use or deal with the property so as to make it unlikely that the owner will recover it. *See* Md.Code (1954 Repl.Vol.1982) Art. 27 § 340(c).[6]

---

6. The Commission elaborates on the definition of "deprive" in its report, stating at p. 236: § 155.00(3) contains a definition of "deprive" which establishes the principal mental element required for the consolidated larceny offense. The "intent to steal" or *animus furandi* which was a material element of common law larceny required an intent to deprive the owner "permanently" of his property. Thus, an unauthorized taking or borrowing of the property of another with the intention of using it temporarily and then returning to the owner has never been considered larceny. The above definition of "deprive" basically retains this principle. The crime of larceny is a serious one and should not be extended to include deprivations that are trifling. § 155.00(3)(a), however, does slightly expand the offense since it covers cases where the defendant intends to appropriate a "substantial portion" of the economic value of the property. A person who takes a

The requisite mental state of having an intent to deprive is most frequently proved by the defendant's handling of the property. Subcommittee, *supra* at p. 11.

█ In the instant case, Lee knowingly removed the bottle of liquor from the shelf and secreted it under his clothing. This act in itself meets the requirement of concealment. The fact that this concealment was brief or that Lee was detected before the goods were removed from the owner's premises is immaterial. The intent to deprive the owner of his property can be inferred from his furtive handling of the property. Lee not only placed the bottle in the waistband of his pants, but did so in a particularly suspicious manner by concealing the bottle such that it was hidden from the shopowner's view. It cannot be so as a matter of law that these circumstances failed to establish the elements of theft. Once a customer goes beyond the mere removal of goods from a shelf and crosses the threshold into the realm of behavior inconsistent with the owner's expectations, the circumstances may be such that a larcenous intent can be inferred.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

perishable commodity of another with the intent of keeping it long enough for it to spoil commits larceny under this provision even though he intends eventually to return it. § 155.00(3)(b) and (c) effect no further expansion since they simply codify instances where the defendant's intent has been treated as an intent to deprive the owner "permanently" of his property and the defendant could therefore be convicted of common law larceny. Courts have never considered the defendant's offer to return the property for a reward or other compensation as negating the intent to steal. Perkins, *Criminal Law* 269 (2d ed. 1969). Maryland courts have also ruled that a defendant who intentionally abandons or encumbers the property of another so as to make it unlikely the owner will recover it is guilty of larceny. *Hadder v. State,* 238 Md. 341, 209 A.2d 70 (1965); *Putinski v. State,* 223 Md. 1, 161 A.2d 117 (1960).