**Richmond**

TYRONNE LYNN WELCH, a/k/a/ JEFFREY L. ALLEN

v.

COMMONWEALTH OF VIRGINIA

No. 1222-91-2

Decided December 22, 1992

COUNSEL

William T. Linka (Boatwright & Linka, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—The appellant, Tyronne Lynn Welch, was indicted and convicted in a jury trial in the Circuit Court of Henrico County of grand larceny, possession of cocaine, and forgery of a public document. He appeals only the grand larceny conviction. Appellant argues that the evidence was insufficient to sustain the grand larceny conviction pursuant to Code § 18.2-95, because the Commonwealth failed to prove that he possessed the merchandise outside the boundaries of the owner's store. Absent such evidence, he contends that the proof failed to establish that he intended to steal the items or that he asported the merchandise to the detriment of the owner. We disagree and affirm his conviction.

## I. THE INCIDENT

On March 13, 1991, the appellant was observed inside the Lowe's Department Store walking toward the appliance section where television sets are displayed. Shortly thereafter, the store manager was alerted by a store employee to respond to the lawn and garden section of the store, which is located in a fenced area outside the store's building. This area does not have any cash registers, and there is a gate in the fence that leads to the public parking lot of the premises. When the manager arrived, he saw the appellant "pushing a grocery cart with two televisions in it" toward the back of the premises in the lawn and garden section. The manager first saw the appellant approximately thirty feet from the exit in the lawn and garden department, heading "towards the gate."

The manager testified that when he and the appellant saw each other the appellant "backed away from the cart as [he] walked towards him . . . [He] asked him if he had a receipt and if the [televisions] were his, and he said no, that they weren't his, and that he was looking for a place to go to pay for them." Upon request, the appellant agreed to go back into the store with the manager, but as the two men were walking toward the store, the appellant fled the premises. The manager pursued

him across the store's parking lot, a street and into another parking lot. At that point, the appellant stopped, turned around, reached into his back pocket, and warned the manager that he had a gun. He stated, "don't make me shoot you." The appellant then resumed running away, whereupon the manager observed that the appellant was unarmed. The manager pursued and ultimately apprehended him. The lawn and garden area, where the appellant was observed with the televisions and where the manager initially challenged him, was open to the public to select items for purchase. However, the area is located outside the confines of the store building, and customers making selections of merchandise in that area must go back into the store to purchase the selected items. The store cashier testified that she saw the appellant go to the appliance section where televisions were displayed, and that she did not register any sales of RCA color televisions that evening. In addition, the record reflects that after the appellant was taken into police custody he was searched and found not to be in possession of any currency or retail charge cards.[1] At the time of his arrest, the appellant identified himself to the police as Jeffrey Lavear Allen, and provided the police with a fictitious date of birth and social security number.[2]

At trial, the appellant moved to strike the grand larceny charge. The trial court denied the motion, and thereafter, the appellant chose not to testify or put on any evidence. The jury returned a verdict of guilty of the crime of grand larceny and fixed the appellant's punishment at two years in the State Penitentiary.

## II. LARCENY

The crime of larceny, although regulated by statute under Code § 18.2-95, is a common law crime and is defined as follows:

[T]he wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with

---

[1] The appellant's wallet contained an MCI telephone charge card, his driver's license, and social security card. In addition, the wallet contained a razor blade and a small plastic straw with cocaine residue on it. These latter items were the basis of the appellant's indictment and subsequent conviction for possession of cocaine, which is not the subject of this appeal.

[2] During processing at police headquarters, the appellant continued to identify himself as Jeffrey Lavear Allen, and he signed a fingerprint processing card using that alias. This conduct gave rise to the appellant's conviction for forging a public document in violation of Code § 18.2-168. This conviction is not the subject of this appeal.

the intention to deprive the owner thereof permanently. The *animus furandi* must accompany the taking, but the wrongful taking of property in itself imports the *animus furandi*.

*Dunlavey v. Commonwealth*, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945); *see Jones v. Commonwealth*, 3 Va. App. 295, 300, 349 S.E.2d 414, 418 (1986).

■ In every larceny there must be an actual taking or severance of the goods from the possession of the owner. To "take" an article means "to lay hold of, seize or grasp it with the hands or otherwise," and to do so with the requisite criminal intent constitutes a felonious taking. *Jones*, 3 Va. App. at 301, 349 S.E.2d at 418. The crime of larceny is complete when a defendant with the requisite intent to permanently deprive takes possession of property without the consent of the owner and moves that property from the exact location it occupied prior to the defendant's conduct.

## III. ASPORTATION

■ A principal issue raised by the appellant is what constitutes sufficient possession and asportation to sustain a conviction for larceny from a self-service retail store. Bona fide customers of self-service retail establishments may enter and examine items displayed for the limited purpose of making selections for purchase. "Where a store owner invites the public to enter his premises he consents for the entrant to view his merchandise for the limited purpose of purchase, or to otherwise engage in a lawful activity thereon." *Jones*, 3 Va. App. at 300, 349 S.E.2d at 417. Retailers *implicitly* grant bona fide customers the privilege to move goods offered for sale, in order for customers to accumulate all the goods desired and to transport them to a designated area for payment.

■ The mere removal of merchandise from a display shelf to a shopping cart, and the subsequent movement of the shopping cart to other areas of the store, is not larceny unless the evidence otherwise shows that the taking was with the intent to steal. *Jones v. State*, 55 Ala. App. 274, 276, 314 So. 2d 876, 878, *writ denied*, 294 Ala. 761, 314 So. 2d 879 (1975). However, when an individual harbors the requisite intent to steal and permanently deprive the owner of property, acts on such intent by taking possession of the property even for an instant, and moves the targeted property, larceny has been committed. The slightest asportation is sufficient, even though the property may

be abandoned immediately. *Whalen v. Commonwealth*, 90 Va. 544, 549, 19 S.E. 182, 183 (1894); *Mason v. Commonwealth*, 200 Va. 253, 256, 105 S.E.2d 149, 151 (1958). "Where the property has been feloniously taken, the slightest removal, even if it is only a hair's breadth, with intent to steal the same, is sufficient to constitute the asportation." *Jones*, 3 Va. App. at 302, 349 S.E.2d at 418 (citing 12A Michie's Jurisprudence *Larceny* § 5 (Repl. Vol. 1978); *Wolverton v. Commonwealth*, 75 Va. 909 (1881)).[3]

■ On appeal, when the sufficiency of the evidence is challenged, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." *Bright v. Commonwealth*, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987) (citing *Wright v. Commonwealth*, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982); *Evans v. Commonwealth*, 215 Va. 609, 612, 212 S.E.2d 268, 271 (1975)). Applying this standard, we find from the undisputed facts in the record that a jury could reasonably have concluded that the appellant actually possessed the televisions from the moment he took them from the display shelf and placed them in the shopping cart, until he abandoned the cart in the lawn and garden area outside the store building. Such possession and movement satisfies the asportation element of larceny, if such conduct was done *animo furandi*. The evidence here clearly showed such an intent to steal.

Some conflict in the law among various states exists regarding the extent of the possession required to satisfy the asportation element of larceny. However, we will not impose upon Virginia retailers a requirement that they must wait until a suspected thief flees the store with merchandise before they may attempt an apprehension. Where

---

[3] In *Jones v. Commonwealth*, 3 Va. App. 295, 349 S.E.2d 414 (1986), we approved the following example which illustrates the asportation element of larceny:

[I]f a person thrusts his hand into the pocket of another with the intent to steal his pocketbook and the money contained therein, and seizes or grasps the pocketbook, and lifts, or raises the same to the top of the pocket, and upon being detected, releases his grasp thereon, and the pocketbook is left hanging partly out of the pocket, then such taking and removal is a sufficient "taking and carrying away" to complete the offense of simple larceny. In such a case, although the whole article has not been removed from the whole space, which the whole article occupied before it was so taken, yet if every part of the article is removed from that particular space which that particular part occupied just before it was so taken, such removal is a sufficient asportation to complete the offense of simple larceny.

*Id.* at 302, 349 S.E.2d at 418 (quoting 12A Michie's Jurisprudence *Larceny* § 5 (Repl. Vol. 1978)).

there is evidence that an individual has acted in a manner that is inconsistent with that of a prospective purchaser, and has exercised immediate dominion and control over the property, despite his continued presence within the owner's store, such conduct establishes sufficient possession to satisfy that element of larceny.

■ Removal of the targeted property from the owner's premises is not required. "One may be said to have taken another's property by a trespass though he has not removed it from the other's premises." Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 8.2(i) (2d ed. 1986). All that is required is that a defendant remove "the items from the locations in the store where they were displayed by the owner." *Jones*, 3 Va. App. at 302, 349 S.E.2d at 418; *accord State v. Carswell*, 296 N.C. 101, 104, 249 S.E.2d 427, 429 (1978); *Hutchinson v. State*, 427 P.2d 112, 114 (Okla. Crim. App. 1967); *State v. White*, 118 Ariz. 279, 280, 576 P.2d 138, 139 (Ct. App. 1978); *State v. Houston*, 688 S.W.2d 838, 840 (Tenn. Crim. App. 1984). *But see State v. Richard*, 216 Neb. 832, 833, 346 N.W.2d 399, 400 (1984). It is the contemporaneous criminal intent that distinguishes the bona fide customer from the thief.

## IV. INTENT

■ To prove that a defendant is guilty of larceny, the Commonwealth must present evidence that the defendant took the property with the *intention* to deprive the owner permanently of his possession of the goods. In determining intent, "the factfinder may consider the conduct of the person involved and all the circumstances revealed by the evidence." *Wynn v. Commonwealth*, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987). Indeed, "[t]he specific intent in the person's mind may, and often must, be inferred from that person's conduct and statements." *Martin v. Commonwealth*, 13 Va. App. 524, 527, 414 S.E.2d 401, 402 (1992) (citing *Hargrave v. Commonwealth*, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974)).

In the case at bar, credible evidence proved that the appellant moved the televisions past the check-out areas and was headed toward an exit gate leading to the parking lot.[4] When the appellant saw the

---

[4] The crime committed by Welch was not attempted larceny because the larceny was complete when Welch moved the televisions from the display shelf with the intent to steal. "When one wrongfully takes property of another with intent to deprive the owner thereof, larceny is complete, though the accused afterwards abandons it." *Slater v. Commonwealth*, 179 Va. 264, 267,

store manager approaching him, he backed away from the cart, and when challenged by the manager, he gave inconsistent explanations for his conduct. The appellant first stated that the televisions were not his. Immediately thereafter, he stated that he was looking for a place to pay for the televisions. Under these circumstances, the fact finder was entitled to conclude that the appellant was untruthful and to infer that he was untruthful in order to conceal his guilt. *Sam v. Commonwealth*, 13 Va. App. 312, 320, 411 S.E.2d 832, 837 (1991).

After the manager asked the appellant to accompany him back inside the store, the appellant fled. During the ensuing chase, the appellant stopped and confronted the manager. Appellant indicated that he was armed and told the manager, "don't make me shoot you." From this evidence the jury could properly infer that the appellant had acted with criminal intent when he moved the televisions toward the exit gate. "[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Langhorne v. Commonwealth*, 13 Va. App. 97, 102, 409 S.E.2d 476, 480 (1991) (quoting *United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970)).

In addition, after the appellant was placed under arrest he identified himself to the police as Jeffrey Lavear Allen, and provided the police with a fictitious social security number and date of birth. While this conduct ultimately gave rise to his conviction of forging a public document, this evidence also was properly considered as evidence of the appellant's intention to commit larceny. *Id.* Further, the record shows that when the appellant was arrested and searched, he did not possess any money or retail charge cards. This evidence indicates that the appellant had no ability to pay for the two televisions. Accordingly, the jury could reasonably have inferred that he acted with the intent to steal. The inferences to be drawn from proven facts are within the province of the jury so long as the inferences are reasonable and justified. *O'Brien v. Commonwealth*, 4 Va. App. 261, 263, 356 S.E.2d 449, 450 (1987).

18 S.E.2d 909, 911 (1942). The jury determined that the defendant possessed the requisite intent at the time of the taking. Because there is credible evidence supporting this determination, the defendant's conviction for larceny is appropriate. For example, if the defendant had been unable to move the televisions because they were secured to the shelf with an anti-theft device, but he had attempted to do so with the requisite intent to steal, he would have been guilty of the crime of attempted larceny.

Upon consideration of all the above, we find that ample evidence in the record supports the jury's conclusion that the Commonwealth proved beyond a reasonable doubt each and every constituent element of the crime of larceny. Accordingly, we affirm the appellant's conviction.

*Affirmed.*

Coleman, J., concurred.

Benton, J., dissenting.

Unless violation of a specific statute is charged, larceny is a common law crime in Virginia. *Darnell v. Commonwealth,* 12 Va. App. 948, 955, 408 S.E.2d 540, 545 (1991). Although the punishment for the larceny is prescribed by statute, *see* Code §§ 18.2-95 and 18.2-96, we must look to case decisions for the elements of the common law offense. *Sylvestre v. Commonwealth,* 10 Va. App. 253, 256, 391 S.E.2d 336, 338 (1990). The case decisions universally define the elements of "[l]arceny at common law [to be] the (1) trespassory (2) taking and (3) carrying away of the (4) personal property (5) of another (6) with intent to steal it." A. Scott & W. LaFave, *Handbook on Criminal Law* § 85, at 622 (1972). Indeed, the majority "agree[s] that in every larceny there must be an actual taking, or severance of the goods from the possession of the owner." The majority further states that "the crime of larceny is complete when a defendant with the requisite intent to permanently deprive: (1) takes possession of property without the consent of the owner; and, (2) moves that property from the exact location it occupied prior to the defendant's conduct." The evidence in this case, however, proved neither a "severance of the goods from the possession of the owner" nor "possession of property without the consent of the owner." Thus, the evidence was insufficient to prove common law larceny.

"To prove common law larceny, the Commonwealth must show that the accused wrongfully acquired possession of personal goods belonging to another." *Payne v. Commonwealth,* 222 Va. 485, 488, 281 S.E.2d 873, 874 (1981). It is a fundamental principle that common law larceny requires proof "that the original taking was trespassory." *Maye v. Commonwealth,* 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972). If no trespass occurs in the taking, the mere act of asportation does not constitute a larceny. *Tanner v. Commonwealth,* 55 Va. (14 Gratt.) 635 (1857).

Any analysis of this argument requires a consideration of the distinction, in the context of larceny, between possession and custody.

The owner of personal property may deliver it to another upon conditions, or in circumstances, which give the recipient bare custody of the property. Constructive possession remains in the owner. Examples are: a watch handed to a friend to time a race, the owner expecting its return at the end of the race; clothing handed to a customer in a clothing store, to try on for size, the owner expecting it to be returned if rejected, paid for if accepted; groceries loaded into a shopping cart in a supermarket, the owner expecting them to be paid for at a cash register before they are removed from the premises. Even though the property remains in the control of the custodian, asportation has not been completed until it is carried away in violation of the condition precedent upon which it was delivered. But if the property is carried away before the condition is performed, with the intent to steal it from the owner, the act becomes larceny. This act converts the recipient's bare custody to possession.

"[T]here can be no trespass against mere custody; trespass can only invade possession and it can be perpetrated as easily by a custodian as by anyone else." Thus, a custodian, holding the property of another upon condition of prompt payment in cash, has committed no larceny until he carries the goods away in violation of the condition, with requisite intent.

*Pritchard v. Commonwealth*, 225 Va. 559, 562, 303 S.E.2d 911, 913 (1983) (citations omitted). When a custodian receives merchandise without a trespass, "[t]o constitute larceny the object . . . must be removed from the premises of the owner, with intent to steal, before the larceny is complete." *State v. Richard*, 216 Neb. 832, 834, 346 N.W.2d 399, 400 (1984). *See also Ray v. United States*, 229 A.2d 161, 162 (D.C. 1967).

The evidence proved that the store manager saw Tyronne Lynn Welch pushing a shopping cart containing two televisions inside the lawn and garden department of a Lowe's Hardware Store. The televisions had been on open display in the store. The manager saw Welch enter the outdoor portion of the lawn and garden department and "saw him pushing a grocery cart with two televisions in it . . . out in the lawn and garden section toward the back of the store." The manager

went in the opposite direction through the front of the store, exited the store's main entrance, and went to the side of the store where the fenced in outdoor portion of the lawn and garden department is located. The manager testified as follows:

> I knew that the lawn and garden department only had one exit and it was at the front of the store, so I exited out the front and then through the gate into that fenced in area.

When the manager walked through the gate into the fenced enclosure of the lawn and garden department, he observed Welch again. Welch was still inside the lawn and garden department approximately thirty feet away from the gate and near other merchandise. The manager testified that he approached Welch and the following transpired:

> When we saw each other he backed away from the cart as I walked towards him. . . . I asked him if he had a receipt and if they were his, and he said no, that they weren't his, and that he was looking for a place to go to pay for them. . . . I asked him if he would come inside with me and he agreed. And as we were walking towards the, the front of the store, he took off running.

Welch had not left the premises of the Lowe's Hardware Store with the televisions and he had not concealed the televisions in any manner.

"[I]n modern self-service stores . . . customers are impliedly invited to examine, try on, and carry about the merchandise on display. Thus in a sense, the owner has consented to the customer's possession of the goods for a limited purpose." *People v. Olivo*, 52 N.Y.2d 309, 317-18, 420 N.E.2d 40, 43 483 N.Y.S. 2d 242, 245 (1981).

> While we are mindful that in some cases the slightest taking or moving may constitute asportation, such circumstances are not present here. Appellant, as any other customer in a self-service store, had the implied permission of the store management to pick up, move, and either replace or pay for any product offered for sale. In fact, the normal procedure in this type of market is for customers to circulate through the sales area, taking from the shelves any items they wish to buy but not paying for their selections until they pass through the check-out counter. Unless some conduct by appellant made his possession clearly adverse to that of the store, he held the merchandise only conditionally until such time as he took it to the check-out counter for payment.

*Durphy v. United States*, 235 A.2d 326, 327 (D.C. 1967) (citations omitted). "In a self-service store, the mere taking up of goods in the sales area does not constitute asportation with felonious intent. There must be some conduct by the customer which makes [the customer's] possession clearly adverse to the store." *Freeman v. Meijer, Inc.*, 95 Mich. App. 475, 479, 291 N.W.2d 87, 89 (1980). *See also State v. Hauck*, 190 Neb. 534, 537, 209 N.W.2d 580, 583 (1973).

> [T]he alleged thief, at some moment, must have obtained *complete, independent and absolute possession and control* of the item, adverse to the rights of the owner. If the possession is *imperfect in any degree*, or if the alleged thief's control *is qualified* by any circumstance, however slight, the severance is incomplete and the act is only an *attempt*.

*Scott v. State*, 409 So. 2d 933, 934 (Ala. Crim. App. 1981).

Because every customer in a self-service store has implied permission to move merchandise, placed on open display, unconcealed about the premises of the store, the trespassory taking and carrying away of the merchandise of another does not occur when the property is moved on the premises. Although a person need not leave the premises with goods in order to be guilty of larceny, if the person does not leave the premises, the proof must establish that the person in some way exercised trespassory possession of the goods inconsistent with the owner's rights. Evidence must prove that the goods were concealed, the tags were altered, or other conduct of a similar type occurred. *See, e.g., State v. Grant*, 373 A.2d 847 (Vt. 1977); *Groomes v. United States*, 155 A.2d 73 (D.C. 1959).

This Court's decision in *Jones v. Commonwealth*, 3 Va. App. 295, 349 S.E.2d 414 (1986), is consistent with the classic common law decisions because the defendant in *Jones* was a trespasser. The majority relies upon the statement in *Jones* that "the slightest removal [of property], even if it is only a hair's breadth, with intent to steal the same, is sufficient to constitute the asportation." *Id.* at 302, 349 S.E.2d at 418. However, that statement was appropriate within the factual context of *Jones* because the evidence proved that the thieves had "secreted themselves in the storeroom [of a department store] where they remained until the store closed." *Id.* When the thieves moved the merchandise from the display counters to the storeroom, they did not have

the owner's permission to be in the store and, thus, no implied permission to move merchandise. *Id.* In that circumstance, any taking or asportation, however slight, was trespassory. *See also Dunlavey v. Commonwealth,* 184 Va. 521, 35 S.E.2d 763 (1945). *Accord State v. Carswell,* 296 N.C. 101, 104, 249 S.E.2d 427, 428-29 (1978) (air conditioner taken by persons trespassing at a motel under construction); *Hutchinson v. State,* 427 P.2d 112, 113 (Okla. Crim. App. 1967) (stranger entered the office of a store manager, pried open a locked drawer, and removed a cash box); *State v. Houston,* 688 S.W.2d 838, 840 (Tenn. Crim. App. 1984) (store employee who concealed merchandise in a bag without implied permission and left it at a pick-up dock for a friend who had not paid for it committed a statutory "fraudulent appropriation" and, thus, a "trespass"). The facts of this case do not prove that Welch committed a trespassory taking or a severance of the owner's possession.

The majority openly acknowledges that they do not want to "impose upon Virginia retailers a requirement that they must wait until a suspected thief flees their store with merchandise before they may attempt an apprehension." They conclude, therefore, that "[w]here there is evidence that an individual has acted, or is acting, in a manner that is wholly inconsistent with that of a prospective purchaser, and has exercised immediate dominion and control over the property, despite his continued presence within the owner's store, such conduct establishes sufficient possession to satisfy that element of larceny." However, Welch did not act in a manner inconsistent with that of a prospective purchaser, and he did not exercise immediate dominion over the property. Welch carted two televisions into the lawn and garden area as any prospective purchaser of televisions might do if they wanted to browse that area of the store. He did not conceal the televisions or alter their tags. His possession of the television sets equalled that of any prospective purchaser. *Cf. State v. Richard,* 346 N.W.2d 399, 400 (Neb. 1984) ("The fact that appellant placed the goods in a shopping bag provided no valid reason for the trial court to infer a criminal intent or a possession clearly adverse to the interest of the store"). Only after Welch was approached by the manager and began to walk to the manager's office did he act in a manner inconsistent with that of a prospective purchaser.

Even if Welch's conduct was culpable, it was not within the common law definition of larceny. Where conduct is not subject to the common law definition of an offense, the legislature may amend the

criminal code specifically to make that conduct a crime. *Lund v. Commonwealth*, 217 Va. 688, 692, 232 S.E.2d 745, 748 (1977). However, it is not the duty of Courts to create new offenses unknown to the common law. *Id.* It is precisely because of the limitations of common law larceny that Virginia, like other states, has adopted statutory shoplifting laws.

> The evolution of theft law is particularly relevant to thefts occurring in modern self-service stores where customers are impliedly invited to examine, try on, and carry about the merchandise on display. In a self-service store, the owner has in a sense, consented to the customer's possession of the goods for a limited purpose. Under common law principles of theft, a person could not have been convicted if apprehended while still in the store because the perpetrator would have rightful possession (albeit temporarily) and thus could not perform the element of trespassory taking until he left the store without paying (at which point it might be too late).

*Lee v. State*, 59 Md. App. 28, 35-36, 474 A.2d 537, 541 (1984).

"Shoplifting statutes create a separate and distinct offense from that denounced by the general larceny or theft statutes." *Yearwood v. State*, 2 Tenn. Crim. App. 552, 561, 455 S.W.2d 612, 616 (1970). *See also State v. White*, 118 Ariz. 279, 280, 576 P.2d 138, 139 (Ct. App. 1978) (announcing the rule that the "shoplifting statute creates a separate and distinct offense from that denounced by the general theft statute" but providing no facts concerning the circumstances under which the defendant was found guilty of larceny). Shoplifting statutes have been enacted to supplement the common law "for the obvious purpose of affording more adequate relief than had previously been available to merchants from the increasing depredations of thieves." *Tweedy v. J.C. Penney Co.*, 216 Va. 596, 598-99, 221 S.E.2d 152, 154-55 (1976). Indeed, in most states "the essential elements of larceny and shoplifting are by no means the same." *Yearwood*, 2 Tenn. Crim. App. at 561, 455 S.W.2d at 617. "[S]tatutory definitions of [shoplifting] differ from those of larceny, most often dispensing with one of the elements in larceny in order to increase the deterrent effect by making convictions easier." *State v. Harper*, 498 A.2d 310, 314 (N.H. 1985). *See also Lee*, 59 Md. App. at 40, 474 A.2d at 543.

In Virginia, the legislature has omitted the requirement of proving that the original taking was trespassory for a specific class of statutory

offenses that are deemed to be larceny. *See Maye v. Commonwealth,* 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972). These statutes now allow proof of larceny in those instances where (1) goods were concealed while on the premises of another, Code § 18.2-103(i), (2) identifying marks were altered or deleted, Code § 18.2-96.1(C), (3) goods were taken without authority, Code § 18.2-103(i), (4) shopping carts were removed beyond the extended premises of the owner, Code § 18.2-102.1(2), (5) price tags are altered, Code § 18.2-103(ii), and (6) goods were transferred from one container to another, Code § 18.2-103(ii). *See Ketchum v. Commonwealth,* 12 Va. App. 258, 262, 403 S.E.2d 382, 384 (1991).

The Commonwealth failed to charge Welch's conduct under the appropriate statute. Moreover, even if the evidence in this record may have warranted a conviction for attempted larceny, *see Wormsley v. United States,* 526 A.2d 1373 (D.C. 1987), the evidence does not suffice to prove larceny. Because the evidence failed to prove Welch took property *"from the possession of* [Lowe's] without the owner's consent,'' *Smith v. Commonwealth,* 222 Va. 646, 649, 283 S.E.2d 209, 210 (1981) (emphasis added), the Commonwealth failed to prove beyond a reasonable doubt the elements of common law larceny.

I dissent.