OPINION OF THE COURT
Chief Judge Cooke.
These cases present a recurring question in this era of the self-service store which has never been resolved by this court: may a person be convicted of larceny for shoplifting if the person is caught with goods while still inside the store? For reasons outlined below, it is concluded that a larceny conviction may be sustained, in certain situations, even though the shoplifter was apprehended before leaving the store.
I
In People v Olivo, defendant was observed by a security guard in the hardware area of a department store. Initially conversing with another person, defendant began to look around furtively when his acquaintance departed. The security agent continued to observe and saw defendant assume a crouching position, take a set of wrenches and secret it in his clothes. After again looking around, defendant began walking toward an exit, passing a number of cash registers en route. When defendant did not stop to pay for the merchandise, the officer accosted him a few feet from the exit. In response to the guard’s inquiry, defendant denied having the wrenches, but as he proceeded to the security office, defendant removed the wrenches and placed them under his jacket. At trial, defendant testified that he had placed the tools under his arm and was on line at a a cashier when apprehended. The jury returned a verdict *314 of guilty on the charge of petit larceny. The conviction was affirmed by Appellate Term.
II
In People v Gasparik, defendant was in a department store trying on a leather jacket. Two store detectives observed him tear off the price tag and remove a “sensormatic” device designed to set off an alarm if the jacket were carried through a detection machine. There was at least one such machine at the exit of each floor. Defendant placed the tag and the device in the pocket of another jacket on the merchandise rack. He took his own jacket, which he had been carrying with him, and placed it on a table. Leaving his own jacket, defendant put on the leather jacket and walked through the store, still on the same floor, by passing several cash registers. When he headed for the exit from that floor, in the direction of the main floor, he was apprehended by security personnel. At trial, defendant denied removing the price tag and the sensormatic device from the jacket, and testified that he was looking for a cashier without a long line when he was stopped. The court, sitting without a jury, convicted defendant of petit larceny. Appellate Term affirmed.
Ill
In People v Spatzier, defendant entered a bookstore on Fulton Street in Hempstead carrying an attaché case. The two co-owners of the store observed the defendant in a ceiling mirror as he browsed through the store. They watched defendant remove a book from the shelf, look up and down the aisle, and place the book in his case. He then placed the case at his feet and continued to browse. One of the owners approached defendant and accused him of stealing the book. An altercation ensued and when defendant allegedly struck the owner with the attaché case, the case opened and the book fell out. At trial, defendant denied secreting the book in his case and claimed that the owner had suddenly and unjustifiably accused him of stealing. The jury found defendant guilty of petit larceny, and the conviction was affirmed by the Appellate Term.
*315 IV
The primary issue in each case is whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to establish the elements of larceny as defined by the Penal Law. To resolve this common question, the development of the common-law crime of larceny and its evolution into modern statutory form must be briefly traced.
Larceny at common law was defined as a trespassory taking and carrying away of the property of another with intent to steal it (e.g., La Fave & Scott, Criminal Law, § 85, at p 622; see 4 Blackstone’s Commentaries, at pp 229-250). The early common-law courts apparently viewed larceny as defending society against breach of the peace, rather than protecting individual property rights, and therefore placed heavy emphasis upon the requirement of a trespassory taking (e.g., Fletcher, Metamorphosis of Larceny, 89 Harv L Rev 469; American Law Institute, Model Panel Code [Tent Draft No. 1], art 206, app A, at p 101; La Fave & Scott, Criminal Law, § 85, at pp 622-623). Thus, a person such as a bailee who had rightfully obtained possession of property from its owner could not be guilty of larceny (e.g., Glanvill, Treatise on the Laws and Customs of the Realm of England [Hall ed, 1965], at pp 128-130 [Book 10, at pp 13-14] ; see, e.g., Carrier’s Case, YB Pasch 13 Edw IV, f 9, pi 5 [1473]). The result was that the crime of larceny was quite narrow in scope.[1]
Gradually, the courts began to expand the reach of the offense, initially by subtle alterations in the common-law concept of possession (e.g., American Law Institute, Model Penal Code [Tent Draft No. 1], art 206, app A, p 101). Thus, for instance, it became a general rule that goods entrusted to an employee were not deemed to be in his possession, but were only considered to be in his custody, so long as he remained on the employer’s premises (e.g., 3 Holdsworth, A History of English Law [3d ed, 1923], at p *316 365).[2] And, in the case of Chisser (Raym Sir T 275, 83 Eng Rep 142), it was held that a shop owner retained legal possession of merchandise being examined by a prospective customer until the actual sale was made. In these situations, the employee and the customer would not have been guilty of larceny if they had first obtained lawful possession of the property from the owner. By holding that they had not acquired possession, but merely custody, the court was able to sustain a larceny conviction.
As the reach of larceny expanded, the intent element of the crime became of increasing importance, while the requirement of a trespassory taking became less significant. As a result, the bar against convicting a person who had initially obtained lawful possession of property faded. In King v Pear (1 Leach 212,168 Eng Rep 208), for instance, a defendant who had lied about his address and ultimate destination when renting a horse was found guilty of larceny for later converting the horse. Because of the fraudulent misrepresentation, the court reasoned, the defendant had never obtained legal possession (id., see King v Semple, 1 Leach 420, 421-324, 168 Eng Rep 312, 313; 1 Hawkins, Pleas of the Crown [Leach 6th ed], 135, n 1). Thus, “larceny by trick” was born (see Hall, Theft, Law and Society [2d ed], atp 40).
Later cases went even further, often ignoring the fact that a defendant had initially obtained possession lawfully, and instead focused upon his later intent (e.g., Queen v Middleton, LR 2 Cr Cas Res 38 [1873]; Queen v Ashwell, 16 QBD 190 [1885]). The crime of larceny then encompassed, not only situations where the defendant initially obtained property by a trespassory taking, but many situations where an individual, possessing the requisite intent, exercised control over property inconsistent with the continued rights of the owner.[3] During this evolutionary proc *317 ess, the purpose served by the crime of larceny obviously shifted from protecting society’s peace to general protection of property rights (Fletcher, Metamorphosis of Larceny, 89 Harv L Rev 469, 519-520, La Fave & Scott, Criminal Law, § 84, at pp 618-619).[4]
Modern penal statutes generally have incorporated these developments under a unified definition of larceny (see, e.g., American Law Institute, Model Penal Code [Tent Draft No. 1], § 206.1 [theft is appropriation of property of another, which includes unauthorized exercise of control]). Case law, too, now tends to focus upon the actor’s intent and the exercise of dominion and control over the property (see, e.g., People v Alamo, 34 NY2d 453; People v Baker, 365 Ill 323; People v Britto, 93 Misc 2d 151, 154). Indeed, this court has recognized, in construing the New York Penal Law,[5] that the uancient common-law concepts of larceny” no longer strictly apply (People v Alamo, supra, at p 459 [emphasis added]).
This evolution is particularly relevant to thefts occurring in modern self-service stores. In stores of that type, customers are impliedly invited to examine, try on, and carry about the merchandise on display. Thus in a sense, the *318 owner has consented to the customer’s possession of the goods for a limited purpose (see, e.g., Day v Grand Union Co., 280 App Div 253, 254-255; Lasky v Economy Grocery Stores, 319 Mass 224; Groomes v United States, 155 A2d 73 [DC]). That the owner has consented to that possession does not, however, preclude a conviction for larceny. If the customer exercises dominion and control wholly inconsistent with the continued rights of the owner, and the other elements of the crime are present, a larceny has occurred.[6] Such conduct on the part of a customer satisfies the “taking” element of the crime.
It is this element that forms the core of the controversy in these cases. The defendants argue, in essence, that the crime is not established, as a matter of law, unless there is evidence that the customer departed the shop without paying for the merchandise.
Although this court has not addressed the issue, case law from other jurisdictions seems unanimous in holding that a shoplifter need not leave the store to be guilty of larceny (e.g., State v Grant, 135 Vt 222; Groomes v United States, 155 A2d 73 [DC], supra; People v Baker, 365 Ill 328; People v Bradovich, 305 Mich 329; accord People v Britto, 93 Misc 2d 151, supra). This is because a shopper may treat merchandise in a manner inconsistent with the owner’s continued rights — and in a manner not in accord with that of a prospective purchaser — without actually walking out of the store. Indeed, depending upon the circumstances of each case, a variety of conduct may be sufficient to allow the trier of fact to find a taking. It would be well-nigh impossible, and unwise, to attempt to delineate all the situations which would establish a taking. But it is possible to *319 identify some of the factors used in determining whether the evidence is sufficient to be submitted to the fact finder.
In many cases, it will be particularly relevant that defendant concealed the goods under clothing or in a container (see, e.g., People v Baker, 365 Ill 328, supra; People v Bradovich, 305 Mich 329, supra). Such conduct is not generally expected in a self-service store and may in a proper case be deemed an exercise of dominion and control inconsistent with the store’s continued rights. Other furtive or unusual behavior on the part of the defendant should also be weighed. Thus, if the defendant surveys the area while secreting the merchandise or abandons his or her own property in exchange for the concealed goods, this may evince larcenous rather than innocent behavior. Relevant too is the customer’s proximity to or movement towards one of the store’s exits. Certainly it is highly probative of guilt that the customer was in possession of secreted goods just a few short steps from the door or moving in that direction. Finally, possession of a known shoplifting device actually used to conceal merchandise, such as a specially designed outer garment or a false bottomed carrying case, would be all but decisive.
Of course, in a particular case, any one or any combination of these factors may take on special significance. And there may be other considerations, not now identified, which should be examined. So long as it bears upon the principal issue — whether the shopper exercised control wholly inconsistent with the owner’s continued rights — any attending circumstance is relevant and may be taken into account.
V
Under these principles, there was ample evidence in each case to raise a factual question as to the defendants’ guilt.[7] In People v Olivo, defendant not only concealed goods in his clothing, but he did so in a particularly suspicious manner. And, when defendant was stopped, he was moving towards the door, just three feet short of exiting the store. *320 It cannot be said as a matter of law that these circumstances fail to establish a taking.[8]
In People v Gasparik, defendant removed the price tag and sensor device from a jacket, abandoned his own garment, put the jacket on and ultimately headed for the main floor of the store. Removal of the price tag and sensor device, and careful concealment of those items, is highly unusual and suspicious conduct for a shopper. Coupled with defendant’s abandonment of his own coat and his attempt to leave the floor, those factors were sufficient to make out a prima facie case of a taking.
In People v Spatzier, defendant concealed a book in an attaché case. Unaware that he was being observed in an overhead mirror, defendant looked furtively up and down the aisle before secreting the book. In these circumstances, given the manner in which defendant concealed the book and his suspicious behavior, the evidence was not insufficient as a matter of law.
VI
A few brief comments are necessary to dispose of other contentions raised by the defendants. As to defendant Olivo, it is difficult to see how he was prejudiced by the charge of attempted larceny (cf. People v Richette, 33 NY2d 42, 45-46). Resolution of defendant Gasparik’s claim that the misdemeanor complaint was never converted into an information, raised for the first time on this appeal, turns on events occurring at the arraignment. The minutes of the arraignment were not included in the record on the appeal to the Appellate Term. Since it was defendant’s obligation to prepare a proper record, and since defense counsel has affirmatively hindered the prosecutor’s recent attempts to remedy the situation, we decline to take cognizance of defendant’s contention. Finally, none of defendant Spatzier’s additional points warrant reversal.
*321 VII
In sum, in view of the modern definition of the crime of larceny, and its purpose of protecting individual property rights, a taking of property in the self-service store context can be established by evidence that a customer exercised control over merchandise wholly inconsistent with the store’s continued rights. Quite simply, a customer who crosses the line between the limited right he or she has to deal with merchandise and the store owner’s rights may be subject to prosecution for larceny. Such a rule should foster the legitimate interests and continued operation of self-service shops, a convenience which most members of the society enjoy.
Accordingly, in each case, the order of the Appellate Term should be affirmed.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
In each case: Order affirmed.

. One popular explanation for the limited nature of larceny is the “unwillingness on the part of the judges to enlarge the limits of a capital offense” (Commonwealth v Ryan, 155 Mass 523, 527; Hall, Theft, Law and Society [2d ed], at p 118 et seq.). The accuracy of this view is subject to some doubt (see Fletcher, Metamorphosis of Larceny, 89 Harv L Rev 469, 483-484, n 64).

. In 1529, a statute was passed subjecting employees to the law of larceny as to all valuable property entrusted to them by their employers (21 Hen VIII, ch 7).

. Parliament also played a role in this development. Thus, for example, in 1857 a statute extended larceny to all conversions by bailees (20 & 21 Viet, ch 54).

. One commentator has argued that the concept of possessiorial immunity— i.e., that one who obtains possession of property by delivery from the owner cannot be guilty of larceny — stems from a general reluctance of the early common law to criminalize acts arising out of private relationships (Fletcher, Metamorphosis of Larceny, 89 Harv L Rev 469, 472-476). Thus, although an owner deprived of property by a bailee could seek a civil remedy in detinue and later trover (Maitland, Equity and the Forms of Action at Common Law, at pp 356-357, 365), the harm was deemed private and not a matter for societal intervention. Over time, the public-private dichotomy waned and the criminal law increasingly was viewed as an instrument for protecting certain interests and controlling social behavior (Fletcher, at pp 502-504). As a concomitant development, the criminal law changed its main focus from the objective behavior of the defendant to his subjective intent (id., at pp 498-518).

. Section 155.05 of the Penal Law defines larceny: “1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains, or withholds such property from an owner thereof. 2. Larceny includes a wrongful taking, obtaining or withholding of another’s property, with the intent prescribed in subdivision one of this section, committed in any of the following ways: (a) By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses.”

. Also required, of course, is the intent prescribed by subdivision 1 of section 155.05 of the Penal Law, and some movement when property other than an automobile is involved (see People v Alamo, 34 NY2d 453, 458-460, supra). As a practical matter in shoplifting cases the same evidence which proves the taking will usually involve movement.
The movement, or asportation requirement has traditionally been satisfied by a slight moving of the property (see Harrison v People, 50 NY 518). This accords with the purpose of the asportation element which is to show that the thief had indeed gained possession and control of the property (People v Alamo, supra, at pp 458, 460; see Harrison v People, supra).

. In analyzing the proof to determine legal sufficiency, the evidence must be viewed in the light most favorable to the prosecution (e.g., People v Churchill, 47 NY2d 151, 155; People v Licitra, 47 NY2d 554, 559).

. As discussed, the same evidence which establishes dominion and control in these circumstances will often establish movement of the property. And, the requisite intent generally may be inferred from all the surrounding circumstances. It would be the rare case indeed in which the evidence establishes all the other elements of the crime but would be insufficient to give rise to an inference of intent (cf. People v Licitra, 47 NY2d 554, 558-559).