■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE DEKLE, Appellant. — Judgment, Supreme Court, New York County (Levittan, J., and a jury), rendered December 17, 1979, convicting defendant after a jury trial of robbery in the third degree and petit larceny, and sentencing him as a second felony offender to an indeterminate term of imprisonment of from 2½ to 5 years for the robbery and concurrent determinate term of one year for petit larceny, affirmed. The facts are fairly stated in the dissent. The issue is whether the theft was a larceny or a robbery, which turns on whether the threat of "the immediate use of physical force *** for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof" occurred "immediately after the taking" (Penal Law, § 160.00, subd 1). The dissent concludes as a matter of law that (1) the larceny had come to an end when the defendant removed the radio from the showcase and removed the price tag in the store, or at the latest when defendant left the store without paying for the item; and (2) when the defendant threatened the security guards with a knife on the street outside of Gimbel's, the force used was no longer "immediately after the taking" but was during immediate flight from a completed larceny and hence could not raise the larceny to the level of a robbery. The dissent makes the larceny an isolated event, terminating in the store or on the threshold to the street, as a matter of law. However, the question is one of fact for the jury, depending on the circumstances *(People v Olivo,* 52 NY2d 309). The jury was entitled to find that defendant's taking of the property was a continuous act, including removal of the item from the showcase, the removal of its price tags in the adjacent department and its removal from the store, and that defendant's threat to use the knife was a threat of "the immediate use of physical force" so shortly after the taking as to constitute the use of physical force "immediately after the taking" to overcome the victim's resistance to the defendant's retention of the property *(People v Guzman,* 68 AD2d 58). If so, there was a robbery. The questions are ones of fact for the jury upon a proper charge as to the meaning of the word "immediately" in the statute. The charge was correct and there was neither objection nor request for amplification or for a different charge. Concur — Kupferman, J. P., Sullivan, Carro and Fein, JJ.

Sandler, J., dissents in a memorandum as follows: Defendant was convicted after a jury trial of robbery in the third degree and petit larceny in connection with two shoplifting forays into the Gimbels East Department Store, located at 86th Street and Lexington Avenue, which occurred, respectively, on January 29, 1979 and February 19, 1979. The most substantial of the questions presented is whether or not the evidence was legally sufficient to sustain a conviction for robbery in the third degree. The specific issue is whether the evidence established, as required by subdivision 1 of section 160.00 of the Penal Law, that the defendant "in the course of committing a larceny" threatened "the immediate use of physical force upon another person for the purpose of: 1. 'overcoming resistance to the taking of the property or the retention thereof immediately after the taking'". I think the evidence legally insufficient to establish the commission of a robbery and would accordingly vacate that conviction, reinstate the jury verdict convicting the defendant of grand larceny in the third degree which was dismissed by the trial court as a lesser included charge, and remand for sentencing. From the evidence presented the jury could reasonably have concluded that the following occurred on January 29, 1979. A security detective at the department store observed the

defendant, known from prior experience as a likely shoplifter, on the main floor of the department store. Thereafter he observed the defendant on the 10th floor in front of a wall showcase inside the radio and TV department. Defendant moved the sliding door and removed something, then went to the back of the adjacent department, placed something behind a couch and re-emerged carrying over his shoulder a square box with a black strap, and then walked toward the elevator banks. The detective went to the TV department to confirm whether or not merchandise was missing, meanwhile losing sight of the defendant. The detective and the attending sales person observed the sliding door open and a TV missing. The detective proceeded to the main floor by escalator where he met another security detective who also knew the defendant. The defendant was seen leaving the department store and was followed by the two detectives, one exiting through the Lexington Avenue exit and the other through the 87th Street exit. Defendant was then observed on Lexington Avenue crossing that avenue in the direction of 87th Street. Somewhere between Lexington Avenue and Third Avenue the detectives caught up with the defendant. One of them identified himself as a Gimbels' security officer. Defendant denied taking any property and refused to return to the store. The detective then said that if the defendant returned the merchandise he would be permitted to go. The defendant said "Well, you will have to take it from me," and removed a closed pocket knife from his back pocket. The two security officers decided to leave. In pertinent part section 160.00 of the Penal Law provides: "A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking". A threshold question, in my opinion a close one, is whether or not the events occurring on the street took place "in the course of committing a larceny." The phrase, as used in section 160.00 of the Penal Law and other related sections of the present law, does not appear to have received any authoritative relevant interpretation. The most pertinent authorities appear to be cases interpreting subdivision 2 of section 1044 of the former Penal Law which in part defined murder in the first degree as including a homicide by "a person engaged in the commission of, or in an attempt to commit a felony". (See, e.g., *People v Elling,* 289 NY 419, 422; *People v Marwig,* 227 NY 382, 385-386; *People v Hüter,* 184 NY 237, 241.) Without analyzing these and other cases in detail, I think it a fair statement that no clear rule controlling the instant case can be discerned in this body of authority, although there are comments in varying contexts that could be quoted on both sides of the immediate issue. More instructive is the manner in which the felony murder section was redrafted in subdivision 3 of section 125.25 of the present Penal Law. The section now embraces within felony murder homicides occurring "in the course of and in furtherance of such crime or of immediate flight therefrom". The Practice Commentaries note that the addition of the phrase "of immediate flight therefrom" was intended to eliminate technical issues which had previously developed with regard to determining whether the underlying felony was still in progress at the time of the killing. A similar formulation was introduced in the new Penal Law definitions of robbery in the second degree (§ 160.10) and robbery in the first degree (§ 160.15), which both attach aggravating significance to certain events occurring "in the course of the commission of the crime or of immediate flight therefrom". As used in the sections, the phrase in "immediate flight therefrom" clearly implies an event occurring after the commission of the crime. The use of this additional phrase in robbery sections defining circumstances under which a more aggravated degree of the crime may be established seems to me to suggest that the phrase

"in the course of committing a larceny" in the basic definition of robbery in the Penal Law should be given an appropriately limited construction. Although the issue seems to me a close one, I think it the sounder view that the threat of force on 87th Street described above occurred during the defendant's immediate flight, not in the course of committing a larceny. As to the statutory requirement that the threat of physical force must occur for the purpose of "overcoming resistance to the taking of the property or to the retention thereof *immediately after the taking*" the issue seems to me much clearer. Contrary to the District Attorney's argument this question has nothing whatsoever to do with the long-standing uncertainty as to whether a shoplifter may properly be arrested before leaving the store. (See *People v Olivo,* 52 NY2d 309.) The "taking" clearly occurred on the 10th floor of Gimbels. It wholly distorts the meaning of the statutory language to find that a threat of force some time later and on the sidewalk across a major avenue, and some distance down another street occurred "immediately after the taking." In concluding that a jury question is presented under these circumstances, the majority opinion significantly expands the statutory definition of robbery to include a broad range of acts that were clearly not intended to be so embraced. More than that, the opinion . erodes drastically a traditional, long-established and meaningful distinction between nonviolent and violent crimes. (See 2 Anderson, Wharton's Criminal Law & Procedure, pp 263-265.) The broader question presented is the definition of the circumstances under which someone undertaking a nonviolent crime should be classified for sentencing purposes as a result of subsequent events with those who undertake to commit a robbery. The line implicitly drawn by the court in this case alters the long-accepted rule in this area and seriously misinterprets the obvious meaning of the statutory language. The issue is not an academic one. In a period which has seen the return to fashion of mandatory minimum sentences, with the minimum sentence sharply escalating when the crime adjudicated is a violent one, the decision in this case will lock sentencing Judges in many situations into sentences that are palpably inappropriate to the criminal activity involved. This defendant committed a larceny, not a robbery. He should be sentenced as a thief, not as a robber. Accordingly, the judgment of the Supreme Court, New York County (Levittan, J., and a jury), convicting defendant of robbery in the third degree and petit larceny and sentencing him as a second felony offender to a term of 2½ to 5 years and a lesser concurrent sentence, should be modified to vacate the conviction for robbery in the third degree and dismiss that charge, reinstate the jury verdict convicting defendant of grand larceny in the third degree, and remand for sentencing on that charge, and otherwise affirmed.