OPINION OF THE COURT
Stephen G. Crane, J.
Michelle Walden (defendant) was convicted, after jury trial, of one count each of robbery, first and second degrees. She makes two motions: pursuant to CPL 330.30 she seeks to set aside the verdict; and under CPL 210.40 she invokes the discretion of the court to dismiss the indictment in furtherance of justice. (See People v Clayton, 41 AD2d 204.)
*616 FACTS
The defendant reaches this lamentable crossroad in her life as the result of an incident in the Famous Deli on October 7, 1983. Ms. Walden went there with Angelita Meeks who was accompanied by her small child. At the candy rack the defendant took a pack of gum, priced at 40 cents, and placed it in her bag. The cashier had observed this. Ms. Walden then went with a bag of potato chips worth 25 cents to the cash register located near the front entrance to the store. She tendered a dollar bill. The cashier offered only 35 cents change. This, he explained, was to compensate for the gum she had secreted in her bag. Defendant became indignant. The owner’s 15-year-old son, Nagib, was attracted by the noise.
Nagib asked to see defendant’s bag, and she refused. She began to scatter or “trash” the merchandise on the candy rack. At this turn of events, Nagib retrieved a long stick from behind the register counter and threatened to strike Ms. Walden if she would not stop “trashing” the candy. As he approached her with the stick, defendant pulled out a razor-type knife (used for opening cartons) which inflicted a one-half inch cut to Nagib’s hairline. This wound later required six stitches. Nagib then hit defendant on the head with the stick. Another employee intervened and both Ms. Walden and Nagib ran out through the open front door. Nagib was treated at St. Clare’s Hospital. Defendant went to the Roosevelt Hospital emergency room.
THE CHARGES
The indictment charged her with robbery, first degree (Penal Law, § 160.15) in that she forcibly stole the gum and in the commission of that crime or in the immediate flight therefrom she used or threatened to use a dangerous instrument — the razor knife. It also charged robbery, second degree (Penal Law, § 160.10) in that she caused physical injury to Nagib during the crime or in immediate flight therefrom. The indictment contained no assault counts (Penal Law, § 120.10, subd 4; § 120.05, subds 1, 2, 6; § 120.00, subds 1-3). Nevertheless, the facts clearly make assault the gist of this case rather than the shoplifting that represents the added ingredient required to charge rob *617 bery. The court charged that, in connection with the definition of the term “forcibly steals” (Penal Law, § 160.00, subd 1), the jurors could consider defendant’s “purpose” in using the knife against Nagib. She contended that her purpose was not to prevent or overcome resistance to the taking of the gum or its retention thereafter. Rather, the thrust of her defense was that she used the knife to defend herself when Nagib attacked her with his nightstick. Thus, the charge incorporated the defense of justification and all of the guides for applying this defense. Likewise, and compatible with this defense theory, the court charged the lesser included offense of petit larceny (Penal Law, § 155.25) as an alternative to the two robbery counts.
defendant’s points
A. Dismissal in furtherance of justice
Defendant, without minimizing the gravity of Nagib’s physical injury and of the charges of which she was found guilty, emphasizes her blameless past and employment history.[1] She propounds the inflexibility of the mandatory sentences required in this case and argues that their imposition will only exacerbate the destruction of her life.
B. Setting aside the verdict for legal insufficiency
Here lies the most fascinating aspect of defendant’s motions. Briefly stated, she contends that she became the owner of the gum, pursuant to sections 2-401 and 2-106 of the Uniform Commercial Code before she used any physical force. This assertion rests on an analysis that, when the cashier retained 40 cents in addition to the price of the potato chips, title to the gum passed to Ms. Walden.[2] Therefore, she could no longer be guilty of a larceny in furtherance of which she used force.
Defendant specifies a second legal defect. She says that, assuming a completed larceny,[3] the force she employed was, as a matter of law, used neither in taking the gum nor in *618 the immediate flight from the commission of the larceny. This observation she supports by referring to all the testimony taken in the light most favorable to the People.
DISCUSSION
A. Clayton motion
The People claim that the motion to dismiss the action in furtherance of justice is untimely. It is accurate to observe that such a motion must be made within 45 days of arraignment and before commencement of trial (CPL 255.20, 255.10, subd 1, par [a]); but, at any time before sentence the court may entertain the motion on its merits in its discretion for good cause shown and in the interest of justice. (CPL 255.20, subd 3.) While I find no good cause to exercise discretion in favor of defendant, I have considered the merits.
After considering, individually and collectively, the factors advanced in defendant’s favor in accordance with the enumeration under CPL 210.40 (subd 1), I find nothing to compel a dismissal in furtherance of justice.
B. Question of ownership
Defendant’s analysis of ownership of the gum, based on the Uniform Commercial Code, is flawed. The touchstone of a sale transaction under the code is a meeting of the minds. Beginning with one of the sections on which she relies, subdivision (1) of section 2-106 of the Uniform Commercial Code, the concept of an agreement is embraced and implanted in the definitions of present and future sales. Turning to the only other section cited by Ms. Walden, section 2-401 of the Uniform Commercial Code, we learn from subdivision (1) that “title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.” (Emphasis added.) And, from subdivision (2) we read “Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods”. By necessary implication, this language, too, demands an agreement.
*619 Enlightening also are the definitions in the code of words used in the foregoing context. For example, subdivision (1) of section 2-105 of the Uniform Commercial Code defines “goods” such as the gum in the case at bar. “Goods” means “all things * * * which are movable at the time of identification to the contract for sale”. “Contract for sale” is defined as a “present sale of goods and a contract to sell goods at a future time.” “Present sale” is one “accomplished by the making of the contract.” (Uniform Commercial Code, § 2-106, subd [1].) Another example is the concept of buyer — “a person who buys or contracts to buy goods.” (Uniform Commercial Code, § 2-103, subd [1], par [a].) Cf. subdivisions (32) and (33) of section 1-201 of the Uniform Commercial Code containing definitions of more general applicability in the code for “purchaser” and “purchase.” (“ ‘Purchaser’ means a person who takes by purchase.” “ ‘Purchase’ includes taking by sale * * * or any other voluntary transaction creating an interest in property”; emphasis added.)
Clearly, Ms. Walden did not intend to buy or to purchase the gum. Defendant vehemently protested when the cashier withheld the purchase price. It can hardly be said that title to the gum passed pursuant to the code by any agreement, meeting of the minds or voluntary act of defendant. It has always been the law that the intent of the parties controls the passage of ownership or title to goods. (Bornhurst v Massachusetts Bonding & Ins. Co., 21 NY2d 581, 583-584; Groves v Warren, 226 NY 459,466; Mitchell v Gilmour, 256 App Div 893.) The intent of Ms. Walden was never to acquire the gum by purchase.
Any construction of the Uniform Commercial Code, however, is not controlling. Defendant was prosecuted under the Penal Law, and it is the definition of “owner” in subdivision 5 of section 155.00 that controls here: “Owner” is defined as “any person who has a right to possession thereof superior to that of the taker, obtainer or withholder.” For the purpose of determining the “owner” under the Penal Law, passage of title does not matter. Rather, the key is the lawfulness of possession. This in turn requires the possessor to have a legally recognizable interest in the property possessed. (Hechtman, Practice Commentaries, *620 McKinney’s Cons Laws of NY, Book 39, Penal Law, § 155.00, p 104.)
Indeed, even a true owner or title holder can be guilty of larceny with respect to his own property where someone else, for example a garage or repair person’s lienor, has a superior right to possession for the moment,[4] i.e., until the auto mechanic is paid for the repairs. (People ex rel. Travis v Sheriff of Cortland County, 275 App Div 444.) In the absence of Ms. Walden’s willingness to pay the purchase price of the chewing gum, it is beyond cavil that she had no possession that the law protects. More pertinently, she had no right to possession equivalent with or superior to that of the merchant whose merchandise she had already stolen before she reached the cashier. (People v Olivo, 52 NY2d 309.)
C. Issue of the purpose of defendant: use of force
It is true that the “taking” was completed before the application of any force. (See n 3, supra.) Defendant argues that the record fails to support a conclusion, necessary to a verdict of guilty of any robbery count, that force was used to overcome resistance to her retaining the chewing gum. Based on the testimony that, rather than leaving by the nearby exit door, defendant went further into the premises to “trash” the candy display, she also contends that her use of the dangerous instrument was not in the course of immediate flight from the commission of the larceny.
Guided by an ample charge on the definition of “immediately” and “forcible stealing” with focus on the purpose of the perpetrator (including the theory of self-defense), the jury had sufficient facts to reach its verdict. Certainly, a rational trier of the facts could reach this conclusion. (Jackson v Virginia, 443 US 307; People v Contes, 60 NY2d 620; People v Waiters, 97 AD2d 356.) It was not irrational or unsupported by the evidence for the jury to conclude that defendant engaged in “trashing” the candy display to divert attention in an effort to retain the chewing gum. Likewise, it was well within the permissible *621 inferences for the jurors to reason that, when the “trashing” did not abate the resistance of Nagib, she escalated the fracas by resort to the knife — all for the original purpose of retaining the stolen property immediately after the taking. (See People v Dekle, 83 AD2d 522, affd 56 NY2d 835.)[5] Finally, that defendant took an intermediate means of flight by destroying a merchandise display before she headed for the exit door is hardly a conclusive demonstration of her purpose. The jury could still rationally conclude that she used the knife in the course of the commission of the larceny — an occurrence that preceded flight — as well as in the “immediate flight therefrom.”
CONCLUSION
The motions to dismiss in furtherance of justice and to set aside the verdict as a matter of law are denied.

. Defendant lost her job owing to absence when she attended her trial.

. The People liken this transaction to one “where a robber demands and takes $10 at gunpoint, but loses his $100 right shoe to the victim, who grabs at it to stop the robber from fleeing, only to be left with the shoe.”

. Putting aside the argument based on the Uniform Commercial Code, there can be no question that defendant had completed her shoplift of the gum. (People v Olivo, 52 NY2d 309.)

. The lien of a bailee of a motor vehicle, motorcycle, motor boat or aircraft for maintenance, storage or repair is provided for in section 184 of the Lien Law. It is said that the lien is a possessory right not affected by title. (Industrial Nat. Bank v Butler Aviation lnt., 370 F Supp 1012, 1017 [EDNY].)

. In People v Dekle (83 AD2d 522, affd 56 NY2d 835), it was rational for the jury to find that the purpose of force applied outside the store and a distance away, after defendant had shoplifted, removed tags and exited, was to overcome resistance to his retaining the property “immediately after the taking.”