■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EUCLIDES PENA, Appellant.—Judgment of the Supreme Court, New York County (Harold J. Rothwax, J., at suppression hearings; Joan B. Carey, J., at trial and sentence), rendered April 26, 1988, convicting the defendant, after a jury trial, of robbery in the first degree and criminal possession of a weapon in the second and third degrees and sentencing him to concurrent indeterminate terms of imprisonment of 2 to 6 years, 1½ to 4½ years, and 1 to 3 years on each crime, respectively, unanimously modified, on the law and facts, to grant the motion to suppress the weapon, vacate the convictions of criminal possession of a weapon in the second and third degrees and reduce the conviction of robbery in the first degree to robbery in the third degree, and to remand for resentence thereon.

Pena and codefendant Mauricio Osorio* were convicted in connection with the August 20, 1987 theft of radio equipment from John and Thomas Ridley and with shortly thereafter threatening John Ridley with a gun when the Ridleys demanded the return of this property. Charges against a third codefendant Freddie Mejia were dismissed upon the People's motion at trial.

In pretrial motions all three defendants challenged the police stop of the vehicle, the seizure of a .38 caliber revolver from the rear passenger floor and the showup identification of the defendants by the complainants, all of which occurred within minutes of the crime.

The People's case at a joint suppression hearing was as follows. On August 20, 1987, at approximately 1:25 A.M., Police Officers Hurt and Stevens were approached by two men who told the officers that they had just been robbed by three Hispanic men who had weapons and were in a tan car, headed northbound on Amsterdam Avenue from 170th Street. Officer Hurt broadcast the information over the radio although he did not recall whether he also communicated that the armed men had committed a robbery, a fact not reflected in the officers' memo book.

The radio run was heard by Police Officers Daniel Spies and David Lynch who were in a marked patrol car on St. Nicholas Avenue near 176th Street. Officer Spies testified on direct examination that the radio transmittal was that an armed robbery had just occurred in the vicinity of West 170th Street and Amsterdam Avenue and that the police were looking for a small tan car occupied by two male Hispanics armed with guns. However, on cross-examination, Spies indicated that the radio communication stated only that there were two male Hispanics with guns in a small tan automobile coming from West 170th Street and Amsterdam Avenue and that no mention was made of a robbery.

Within a few minutes of hearing the transmittal, Officers Spies and Lynch saw a small tan automobile, occupied by three male Hispanics, stopped at a traffic light in a northbound lane of Amsterdam Avenue at 176th Street. Traffic on Amsterdam Avenue was very light and this was the only car stopped at the light. Spies followed the car until 179th Street. Neither he nor Lynch observed any "suspicious gestures" or

* On May 16, 1989, this court affirmed Osorio's conviction of criminal possession of a weapon in the third degree. (150 AD2d 225 [1st Dept 1989], *lv granted* 74 NY2d 745 [1989].)

"furtive movements" by the occupants of the tan car. At 179th Street, Spies turned on the high beams and the siren of the patrol car. Over the loudspeaker Lynch advised the driver of the tan car to stop, which he did. Lynch then told the occupants to open the windows and put their hands out through the windows. With guns drawn, the officers approached the tan car. One at a time Osorio, Mejia and the defendant were asked to exit the car and upon doing so were frisked for weapons. No weapons were discovered. Lynch then looked on to the floor of the rear passenger portion of the automobile. Within seconds, from under papers and debris on the right side, he retrieved a .38 caliber revolver. Lynch then yelled to Officer Spies, "I have got a gun be careful."

As Spies and Lynch handcuffed the defendants, Officer Hurt, the Ridleys and other police units arrived. The Ridleys rushed from their van, pointing to the defendants and yelling that the three defendants were the ones who had robbed and threatened them at gunpoint. Specifically, John Ridley identified Pena and Osorio as the persons who had possession of a gun. From the back seat and dashboard of the tan car, Lynch recovered the stolen equipment which the Ridleys also identified.

The suppression court denied the motions to suppress the gun, property and identifications. The court found that Officers Spies and Lynch, based upon the radio transmission and their own observations, were justified in stopping the defendants' vehicle, and in conducting a frisk. He concluded that Officer Lynch acted appropriately in searching the car to determine whether or not the weapons mentioned in the radio run were in the vehicle, that the showup identification was reliable and that the radio equipment was properly seized.

The gun should be suppressed and the conviction modified pursuant to the recent decision of the Court of Appeals in *People v Torres* (74 NY2d 224 [1989]). While the radio transmittal, together with observations by Officers Lynch and Spies, justified the forcible stop, frisk and any questioning of Pena and his codefendants, there was, as a matter of law, no justification for conducting the further, more intrusive search of the vehicle which resulted in the discovery of the gun.

In *People v Torres (supra),* police acting upon an anonymous telephone tip that a specifically described suspect, wanted by police in connection with a homicide investigation, could be found at a barber shop, that he was carrying a gun in a shoulder bag and that he drove a black Eldorado automobile,

observed the defendant who met the description leave the barber shop with another man and enter a black Eldorado. After approaching the car at gunpoint, ordering the two men out of the car and frisking them, a detective removed a shoulder bag containing a revolver and ammunition from the front seat of the car. The Court of Appeals in *People v Torres (supra,* at 226) suppressed the firearm and ammunition, stating: "A police officer acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself from harm while he conducts the inquiry authorized by CPL 140.50 (1). In *People v Lindsay* (72 NY2d 843, 845), we left open the question whether under article I, § 12 of our State Constitution such an intrusion may extend to items within the passenger compartment of the suspects' vehicle solely on the theory that 'if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and will then have access to any weapons inside' *(Michigan v Long,* 463 US 1032, 1052). * * * [W]e now answer that question in the negative and hold that, despite Supreme Court's approval of such intrusions * * * our more protective State constitutional provisions prohibit them under the circumstances presented here (NY Const, art I, § 12)."

In this case, as in *People v Torres (supra),* the People articulate no legitimate law enforcement concerns which would justify this encroachment upon the defendants' privacy. *(See, People v Blasich,* 73 NY2d 673 [1989] [having validly arrested occupants of a car, police may contemporaneously search the passenger compartment for weapons, related evidence, or to thwart a means of escape].)

Here, as in *People v Torres (supra),* the suspects had been patted down without incident and the police officers were therefore free to question them with no apparent risk of injury to themselves. Any residual fear that the officers may have had about the suspects' ability to bolt and retrieve a gun from the car could have been eliminated by asking the suspects to move away from the vicinity of the car. *(See, People v Torres,* 74 NY2d, *supra,* at 230.)

The showup identification, occurring spontaneously within minutes of the robbery, was reliable. Moreover, the identifications were not the immediate consequence of the unlawful search, but rather were evidence obtained independently of the search. *(People v Stith,* 69 NY2d 313, 318 [1987].)

Whether the taking of the radio equipment was a continu-

ous act and whether defendant's use of a gun was a threat of "immediate" use of physical force so shortly after the taking as to constitute the use of physical force to overcome complainants' resistance to the defendants' retention of the property were questions of fact for the jury. *(People v Dekle,* 83 AD2d 522 [1st Dept 1981], *affd* 56 NY2d 835 [1982].)

Thus, Pena's conviction of robbery in the first degree (Penal Law § 160.15 [2]), which required proof of a loaded and operable weapon (Penal Law § 10.00 [12]), should be modified to a conviction of robbery in the third degree (Penal Law § 160.05), a lesser included offense, and the matter remanded for resentencing. *(See, People v Almestica,* 42 NY2d 222 [1977].)* Concur —Milonas, Kassal, Smith and Rubin, JJ.

Kupferman, J. P., concurs in a separate memorandum as follows: I concur on constraint of *People v Torres* (74 NY2d 224 [1989]).