86 N.Y.2d 248 (1995)
654 N.E.2d 1237
630 N.Y.S.2d 989
The People of the State of New York, Respondent,
v.
Michael Jensen, Appellant.
Court of Appeals of the State of New York.
Argued June 7, 1995.
Decided July 5, 1995.
Michael D. Pinnisi, Ithaca, for appellant.
George M. Dentes, District Attorney of Tompkins County, Ithaca (Gary U. Surdell of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, BELLACOSA, SMITH and LEVINE concur with Judge CIPARICK; Judge TITONE dissents and votes to reverse in a separate opinion.
*250 CIPARICK, J.
The question presented on this appeal is whether the Grand Jury evidence is legally sufficient to support the indictment. We agree with the Appellate Division that it is.
On November 6, 1992, at approximately 3:13 A.M., Cornell University Department of Public Safety Officers Kathy Zoner and Richard Brewer observed defendant carrying a dormitory lounge chair on his head as he crossed a bridge on the Cornell campus. Upon being stopped defendant informed the officers that he had obtained the chair in Donlon Hall, a residence located on the North Campus, and was taking it to the West Campus as a prank. Defendant declined to confirm whether he *251 was a student. He stated that he had no identification on his person and, despite repeated requests, otherwise refused to identify himself in any manner. He was informed, in response to his inquiry, that he would be referred to the Cornell Judicial Administrator if he was a student; if he was not a student, he would be charged with petit larceny in City Court. After approximately 10 minutes of fruitless inquiries, one of the officers expressed impatience with defendant's uncooperative behavior, at which point defendant stated that he did have identification after all, and began reaching into his pocket. Officer Brewer stated that he would remove the identification from defendant's pocket himself and directed defendant to turn and face the police car. When Officer Brewer reached for defendant's pocket, defendant slapped his hands away. Informed that he was under arrest, defendant bolted from the officers and ran toward the gorge under the bridge. He was pursued by Officer Zoner who caught him by the ankle as he lay on his back on the steep slope. Defendant demanded to be let go and Officer Zoner refused. Defendant rolled over and dragged her down the side of the gorge until she hit a concrete abutment and smashed her face and broke her teeth. Defendant escaped.
Defendant was subsequently indicted on four counts: three misdemeanors, petit larceny, criminal possession of stolen property in the fifth degree and resisting arrest, and one felony, assault in the second degree. County Court granted defendant's motion to dismiss the indictment in its entirety. The Appellate Division reversed, holding that the evidence was sufficient for the Grand Jury to indict on the larceny and possession of stolen property counts, as defendant's larcenous intent could be inferred from the circumstances and his admissions. Furthermore, the evidence before the Grand Jury was sufficient to sustain the charge of resisting arrest, and defendant's intentional acts in preventing his arrest constituted sufficient evidence of the crime of assault. A Justice of the Appellate Division granted leave to appeal.
On a motion to dismiss an indictment, the sufficiency of the People's presentation "is properly determined by inquiring whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury" (People v Jennings, 69 N.Y.2d 103, 114). The Grand Jury must have before it evidence legally sufficient to establish a prima facie case, including all the elements of the crime, and reasonable cause to believe that *252 the accused committed the offense to be charged (id.; People v Galatro, 84 N.Y.2d 160; CPL 190.65 [1]). "Legally sufficient" evidence is defined in CPL 70.10 as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (see also, CPL 190.65 [1]; People v Mayo, 36 N.Y.2d 1002, 1004 ["In the context of the Grand Jury procedure, legally sufficient means prima facie, not proof beyond a reasonable doubt"]). The fact that the proof presented to the Grand Jury is also susceptible of inferences of innocence is irrelevant, "as long as the Grand Jury could rationally have drawn the guilty inference" (see, People v Deegan, 69 N.Y.2d 976, 979).
The inquiry of the reviewing court is limited to ascertaining the "legal sufficiency" of the evidence, and does not include weighing the proof or examining its adequacy at the Grand Jury stage, or determining whether there was reasonable cause to believe the accused committed the crimes charged, as the resolution of such questions is exclusively the province of the Grand Jury (see, Galatro, 84 NY2d, at 164, supra; Jennings, 69 NY2d, at 115, supra; Deegan, 69 NY2d, at 979, supra).
Defendant argues that the indictment should be dismissed in its entirety because the evidence presented to the Grand Jury on each of the counts was not legally sufficient to establish the charged offenses. This contention lacks merit.
A person is guilty of petit larceny when he or she "steals property" (Penal Law § 155.25). "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]). The intent to "deprive" or "appropriate" prescribed in section 155.05 is satisfied by the exertion of " `permanent or virtually permanent control over the property taken' " (Jennings, 69 NY2d, at 118, supra).
We conclude that the proof before the Grand Jury, viewed in the light most favorable to the People, was legally sufficient to support the inference that defendant acted with larcenous intent. Defendant was stopped at 3:13 A.M. carrying away a dormitory lounge chair he admitted did not belong to him. When appropriately questioned by the officers, defendant offered the explanation that he was involved in a "prank". However, throughout the 10-minute encounter, defendant *253 would not confirm whether he was a student and repeatedly refused to identify himself in any manner. In light of the unusual circumstances and defendant's evasive and uncooperative behavior, we agree with the Appellate Division that there was sufficient proof before the Grand Jury from which it could rationally infer that defendant intended to steal the chair. "That other, innocent inferences could possibly be drawn from the facts is irrelevant on this pleading stage inquiry, as long as the Grand Jury could rationally have drawn the guilty inference" (People v Deegan, 69 NY2d, at 979, supra).
Defendant's argument for dismissal of the charge of criminal possession of stolen property in the fifth degree, which has for its premise the asserted absence of evidence of intent to steal the chair, is similarly unavailing in light of our conclusion that the People made out a prima facie case of larceny.
Defendant also argues that the charge of resisting arrest must be dismissed because the attempted arrest was unlawful. "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person" (Penal Law § 205.30). A key element of resisting arrest is the existence of an authorized arrest, including a finding that the arrest was premised on probable cause (see, People v Peacock, 68 N.Y.2d 675, 676-677; People v Parker, 33 N.Y.2d 669; Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.30, at 503 [an individual who intentionally prevents an unauthorized arrest is not guilty of resisting arrest]). In this case, defendant's argument that the officers did not have probable cause to arrest him for stealing the chair is misplaced. In the context of a motion to dismiss an indictment, we are limited to determining whether there was sufficient proof of facts before the Grand Jury from which it could rationally infer that the officers had probable cause to arrest for larceny, a question we answer in the affirmative.
Finally, the Appellate Division properly reinstated the charge of assault in the second degree. Penal Law § 120.05 (3) provides that a person is guilty of that crime when, "[w]ith intent to prevent a peace officer * * * from performing a lawful duty, he causes physical injury to such peace officer." In this case, the evidence before the Grand Jury was legally *254 sufficient to establish that defendant intended to prevent Officer Zoner from performing a lawful duty and caused her to sustain serious physical injuries.
We have considered defendant's remaining contention and conclude that it is without merit.
The order of the Appellate Division should be affirmed.
TITONE, J. (dissenting).
This is a case in which the overzealous conduct of an inexperienced campus security "peace" officer transformed what should have been handled as a collegiate disciplinary matter into a full-scale criminal indictment. Inasmuch as there was insufficient evidence before the Grand Jury to support any of the charges against this defendant, I dissent from the majority's decision to uphold the indictment.
As the majority notes, the evidence before the Grand Jury showed that defendant, an 18-year-old college freshman, was stopped by two campus security officers at approximately 3:13 A.M. on the grounds of Cornell University. At the time he was stopped, he was carrying a lounge chair. In response to one of the officer's questions, defendant stated that he had taken the chair from a dormitory on the north side of the campus and was carrying it to the western part of campus "as a prank" that had been inspired by some upper classmen.
Initially, defendant declined to produce identification or even to state whether or not he was a student. After an impasse lasting some 10 minutes, defendant finally acknowledged that he did have identification with him. However, one of the officers decided that defendant should not be permitted to reach into his own pocket for his documents and that instead a "frisk" was in order, "[b]ecause [defendant] had already told us that he didn't have identification" and "[this] was taking too much time." The confrontation escalated when defendant "slapped" the officer's hand away as the officer "reached for him." At that point, one of the officers threatened to arrest defendant for "resisting arrest" while the other, less experienced officer stated that defendant was, in fact, under arrest. In response, defendant fled on foot, and the officers gave chase. One of the officers was injured in an effort to capture and subdue defendant.
Defendant escaped from the officer's grasp, but he subsequently "turned himself in" to campus authorities after consulting with a "legal advisor." It was on the basis of this evidence that the Grand Jury indicted defendant for petit *255 larceny (Penal Law § 155.25), criminal possession of stolen property (Penal Law § 165.40), resisting arrest (Penal Law § 205.30) and second degree assault (Penal Law § 120.05 [3]). As discussed in more detail below, none of these charges can be sustained.
There is no dispute about the standard for reviewing the sufficiency of the evidence before the Grand Jury. Legally sufficient evidence means "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10; see, People v Galatro, 84 N.Y.2d 160). The existence of inferences other than that of guilt is irrelevant at this stage, since the task of choosing among conflicting inferences is for the Grand Jury, and the only question for review is whether the guilty inference could rationally have been drawn (People v Deegan, 69 N.Y.2d 976).
Even under this minimally demanding standard, the petit larceny and criminal possession of stolen property charges do not pass muster. A person commits larceny "when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]). The "taking" element of larceny may be "satisfied by a showing that the thief exercised dominion and control over the property for a period of time, however temporary, in a manner wholly inconsistent with the owner's continued rights" (People v Jennings, 69 N.Y.2d 103, 118). Where asportation of the object is involved, the item need not be completely removed from the premises as long as there has been some physical movement and an exercise of dominion and control that is inconsistent with the owner's rights (People v Olivo, 52 N.Y.2d 309). In that event, the "taking" element of larceny may be inferred from any surrounding circumstances indicative of such an exercise (id., at 318-319).
Here, the evidence against defendant showed that he was seen on campus carrying a lounge chair apparently belonging to the University.[*] He had not removed the chair from the University grounds and, more importantly, he had committed no act that could be construed as an exercise of dominion and *256 control inconsistent with the owner's rights. Nor was there evidence from which such an exercise could be inferred. To the contrary, the only evidence before the Grand Jury was that the lounge chair defendant carried was being taken to another part of the University campus for use in a different dormitory. Thus, neither defendant's conduct in carrying the chair away from its usual location nor his stated plan for the chair was inconsistent with its owner's rights. Notably, even if the Grand Jury chose to disregard the exculpatory portions of defendant's statements to the campus police, it could not rationally have drawn an inference that the statutory "taking" element was satisfied, since there was no other evidence in the case to support such an inference.
For similar reasons, the element of larcenous intent was not established. Larceny requires the specific intent to "deprive" another of property or to "appropriate" another's property to oneself or to a third person (Penal Law § 155.05 [1]). "Deprive" and "appropriate" " `connote a purpose * * * to exert permanent or virtually permanent control over the property taken, or to cause permanent or virtually permanent loss to the owner of the possession or use thereof' " (People v Jennings, supra, at 118, quoting Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 155.00, at 103 [1975]). Larceny's intent requirement is not satisfied where the actor's intent was only "temporarily to use property without the owner's permission" (id., at 119).
The facts in this case demonstrate, at worst, a temporary misuse by defendant of a lounge chair that had been made available to the students residing in a particular dormitory. There was no basis for inferring an intention to exert "permanent or virtually permanent" control of the chair or to cause its permanent loss to the owner. Accordingly, the intent element of the crime was simply not present.
Since, as a matter of law, there was no showing that defendant stole property by committing a larceny, the criminal possession of stolen property charge must also fail. Similarly, the resisting arrest charge was unsupported because the essential element of probable cause to arrest was lacking (see, e.g., People v Peacock, 68 N.Y.2d 675; People v Parker, 33 N.Y.2d 669; People v Stephens, 100 Misc 2d 267). Not only was there no proof that a larceny was in progress, but the facts contemporaneously known to the officers  i.e., that defendant was moving a dormitory lounge chair from one part of the campus *257 to the other  actually negated the possibility of that crime. Even if the officers had been skeptical about defendant's story, their doubts would not have been sufficient by themselves to raise the level of suspicion to probable cause for an arrest. Indeed, it was apparent from the evidence before the Grand Jury that defendant was being "arrested" not because he was guilty of any perceived criminal conduct, but rather because his delays in furnishing identification exceeded the limits of the campus security officers' patience. While defendant's reluctance to cooperate may have been annoying to the officers, it certainly did not, under the circumstances, supply the necessary probable cause to believe that defendant was committing a crime.
Finally, the second degree assault count cannot be sustained because the sequence of events leading to the officer's injury was the product of the officers' own misconduct. "A person is guilty of assault in the second degree when * * * [w]ith intent to prevent a peace officer * * * from performing a lawful duty, he causes physical injury to such peace officer" (Penal Law § 120.05 [3]). Although probable cause to arrest is not a required element (see, Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.30, at 503), there must still be a showing that the underlying police conduct was lawful.
Here, the campus security officers initially acted lawfully when they stopped defendant to inquire about the lounge chair he was carrying (see, People v Hollman, 79 N.Y.2d 181; People v De Bour, 40 N.Y.2d 210). Further, they were within the scope of their lawful duties when they asked defendant for identification and continued to press him when he verbally resisted (see generally, People v Hollman, supra). However, the officers' conduct crossed the line and entered the realm of illegality when, after defendant agreed to show them his identification papers, they nonetheless decided to "frisk" him and then attempted to place him under "arrest" because of his resistance to this patently unjustified intrusion. The ensuing foot pursuit that led to the officer's injury was equally improper, since there was not even a "reasonable suspicion" at that point that defendant had been engaged in criminality (see, People v Martinez, 80 N.Y.2d 444).
In sum, it cannot be said that the injured campus security officer was engaged in the performance of any "lawful duty" when she chased defendant into a gorge, grabbed at his ankle *258 and fell onto a concrete abutment. By the time the chase occurred, the confrontation had been transformed from a legitimate investigative stop into a contest of wills inspired by nothing more than the officers' own unchecked choler. Such a sequence of events is an inappropriate predicate for a second degree assault charge under Penal Law § 120.05 (3) (see, e.g., People v Vest, 11 AD2d 1080).
While the impulse to seek retribution is understandable when a law enforcement officer has been frustrated, taunted and even injured, the Grand Jury exists to ensure that the mechanism of criminal prosecution is not abused. In this case, the protection usually afforded by the Grand Jury failed and defendant, a college student caught in a foolish prank that escalated out of control, has been subjected inappropriately to criminal indictment. Since the evidence before the Grand Jury was insufficient to establish prima facie every required element of the charged crimes, the proper course would be for us to intervene by dismissing the indictment. Inasmuch as the majority has elected not to do so in this case, I dissent and cast my vote to reverse.
Order affirmed.
NOTES
[*] The People did not even adduce proof as to the identity of the chair's owner or the lack of such owner's permission to move the chair from one part of the campus to another. This defect in proof is alone sufficient to nullify the indictment's larceny charge.