Titone, J.
(dissenting). This is a case in which the overzealous conduct of an inexperienced campus security "peace” officer transformed what should have been handled as a collegiate disciplinary matter into a full-scale criminal indictment. Inasmuch as there was insufficient evidence before the Grand Jury to support any of the charges against this defendant, I dissent from the majority’s decision to uphold the indictment.
As the majority notes, the evidence before the Grand Jury showed that defendant, an 18-year-old college freshman, was stopped by two campus security officers at approximately 3:13 a.m. on the grounds of Cornell University. At the time he was stopped, he was carrying a lounge chair. In response to one of the officer’s questions, defendant stated that he had taken the chair from a dormitory on the north side of the campus and was carrying it to the western part of campus "as a prank” that had been inspired by some upper classmen.
Initially, defendant declined to produce identification or even to state whether or not he was a student. After an impasse lasting some 10 minutes, defendant finally acknowledged that he did have identification with him. However, one of the officers decided that defendant should not be permitted to reach into his own pocket for his documents and that instead a "frisk” was in order, "[bjecause [defendant] had already told us that he didn’t have identification” and "[this] was taking too much time.” The confrontation escalated when defendant "slapped” the officer’s hand away as the officer "reached for him.” At that point, one of the officers threatened to arrest defendant for "resisting arrest” while the other, less experienced officer stated that defendant was, in fact, under arrest. In response, defendant fled on foot, and the officers gave chase. One of the officers was injured in an effort to capture and subdue defendant.
Defendant escaped from the officer’s grasp, but he subsequently "turned himself in” to campus authorities after consulting with a "legal advisor.” It was on the basis of this evidence that the Grand Jury indicted defendant for petit *255 larceny (Penal Law § 155.25), criminal possession of stolen property (Penal Law § 165.40), resisting arrest (Penal Law § 205.30) and second degree assault (Penal Law § 120.05 [3]). As discussed in more detail below, none of these charges can be sustained.
There is no dispute about the standard for reviewing the sufficiency of the evidence before the Grand Jury. Legally sufficient evidence means "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’ (CPL 70.10; see, People v Galatro, 84 NY2d 160). The existence of inferences other than that of guilt is irrelevant at this stage, since the task of choosing among conflicting inferences is for the Grand Jury, and the only question for review is whether the guilty inference could rationally have been drawn (People v Deegan, 69 NY2d 976).
Even under this minimally demanding standard, the petit larceny and criminal possession of stolen property charges do not pass muster. A person commits larceny "when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof’ (Penal Law § 155.05 [1]). The "taking” element of larceny may be "satisfied by a showing that the thief exercised dominion and control over the property for a period of time, however temporary, in a manner wholly inconsistent with the owner’s continued rights” (People v Jennings, 69 NY2d 103, 118). Where asportation of the object is involved, the item need not be completely removed from the premises as long as there has been some physical movement and an exercise of dominion and control that is inconsistent with the owner’s rights (People v Olivo, 52 NY2d 309). In that event, the "taking” element of larceny may be inferred from any surrounding circumstances indicative of such an exercise (id., at 318-319).
Here, the evidence against defendant showed that he was seen on campus carrying a lounge chair apparently belonging to the University.* He had not removed the chair from the University grounds and, more importantly, he had committed no act that could be construed as an exercise of dominion and *256 control inconsistent with the owner’s rights. Nor was there evidence from which such an exercise could be inferred. To the contrary, the only evidence before the Grand Jury was that the lounge chair defendant carried was being taken to another part of the University campus for use in a different dormitory. Thus, neither defendant’s conduct in carrying the chair away from its usual location nor his stated plan for the chair was inconsistent with its owner’s rights. Notably, even if the Grand Jury chose to disregard the exculpatory portions of defendant’s statements to the campus police, it could not rationally have drawn an inference that the statutory "taking” element was satisfied, since there was no other evidence in the case to support such an inference.
For similar reasons, the element of larcenous intent was not established. Larceny requires the specific intent to "deprive” another of property or to "appropriate” another’s property to oneself or to a third person (Penal Law § 155.05 [1]). "Deprive” and "appropriate” " 'connote a purpose * * * to exert permanent or virtually permanent control over the property taken, or to cause permanent or virtually permanent loss to the owner of the possession or use thereof ” (People v Jennings, supra, at 118, quoting Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 155.00, at 103 [1975]). Larceny’s intent requirement is not satisfied where the actor’s intent was only "temporarily to use property without the owner’s permission” (id., at 119).
The facts in this case demonstrate, at worst, a temporary misuse by defendant of a lounge chair that had been made available to the students residing in a particular dormitory. There was no basis for inferring an intention to exert "permanent or virtually permanent” control of the chair or to cause its permanent loss to the owner. Accordingly, the intent element of the crime was simply not present.
Since, as a matter of law, there was no showing that defendant stole property by committing a larceny, the criminal possession of stolen property charge must also fail. Similarly, the resisting arrest charge was unsupported because the essential element of probable cause to arrest was lacking (see, e.g., People v Peacock, 68 NY2d 675; People v Parker, 33 NY2d 669; People v Stephens, 100 Misc 2d 267). Not only was there no proof that a larceny was in progress, but the facts contemporaneously known to the officers — i.e., that defendant was moving a dormitory lounge chair from one part of the campus *257 to the other — actually negated the possibility of that crime. Even if the officers had been skeptical about defendant’s story, their doubts would not have been sufficient by themselves to raise the level of suspicion to probable cause for an arrest. Indeed, it was apparent from the evidence before the Grand Jury that defendant was being "arrested” not because he was guilty of any perceived criminal conduct, but rather because his delays in furnishing identification exceeded the limits of the campus security officers’ patience. While defendant’s reluctance to cooperate may have been annoying to the officers, it certainly did not, under the circumstances, supply the necessary probable cause to believe that defendant was committing a crime.
Finally, the second degree assault count cannot be sustained because the sequence of events leading to the officer’s injury was the product of the officers’ own misconduct. "A person is guilty of assault in the second degree when * * * [w]ith intent to prevent a peace officer * * * from performing a lawful duty, he causes physical injury to such peace officer” (Penal Law § 120.05 [3]). Although probable cause to arrest is not a required element (see, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 205.30, at 503), there must still be a showing that the underlying police conduct was lawful.
Here, the campus security officers initially acted lawfully when they stopped defendant to inquire about the lounge chair he was carrying (see, People v Hollman, 79 NY2d 181; People v De Bour, 40 NY2d 210). Further, they were within the scope of their lawful duties when they asked defendant for identification and continued to press him when he verbally resisted (see generally, People v Hollman, supra). However, the officers’ conduct crossed the line and entered the realm of illegality when, after defendant agreed to show them his identification papers, they nonetheless decided to "frisk” him and then attempted to place him under "arrest” because of his resistance to this patently unjustified intrusion. The ensuing foot pursuit that led to the officer’s injury was equally improper, since there was not even a "reasonable suspicion” at that point that defendant had been engaged in criminality (see, People v Martinez, 80 NY2d 444).
In sum, it cannot be said that the injured campus security officer was engaged in the performance of any "lawful duty” when she chased defendant into a gorge, grabbed at his ankle *258 and fell onto a concrete abutment. By the time the chase occurred, the confrontation had been transformed from a legitimate investigative stop into a contest of wills inspired by nothing more than the officers’ own unchecked choler. Such a sequence of events is an inappropriate predicate for a second degree assault charge under Penal Law § 120.05 (3) (see, e.g., People v Vest, 11 AD2d 1080).
While the impulse to seek retribution is understandable when a law enforcement officer has been frustrated, taunted and even injured, the Grand Jury exists to ensure that the mechanism of criminal prosecution is not abused. In this case, the protection usually afforded by the Grand Jury failed and defendant, a college student caught in a foolish prank that escalated out of control, has been subjected inappropriately to criminal indictment. Since the evidence before the Grand Jury was insufficient to establish prima facie every required element of the charged crimes, the proper course would be for us to intervene by dismissing the indictment. Inasmuch as the majority has elected not to do so in this case, I dissent and cast my vote to reverse.
Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Levine concur with Judge Cipakick; Judge Titone dissents and votes to reverse in a separate opinion.
Order affirmed.

 The People did not even adduce proof as to the identity of the chair’s owner or the lack of such owner’s permission to move the chair from one part of the campus to another. This defect in proof is alone sufficient to nullify the indictment’s larceny charge.